18240

Larry L. HATCHETT, Respondent, v. NATIONWIDE MUTUAL
INSURANCE COMPANY, Appellant

(137 S. E. (2d) 608)

426

*Messrs. Leatherwood, Walker, Todd & Mann,* of Green-ville, *for Appellant,*

*O. L. Long,* Esq., of Laurens, *for Respondent,*

July 15, 1964.

TAYLOR, Chief Justice.

Plaintiff, Larry L. Hatchett, instituted this action in December, 1962, to recover from defendant, Nationwide Mutual Insurance Company, the amount of a default judgment obtained against one Kenneth Stone, an uninsured motorist, as the result of an automobile accident in which plaintiff received personal injuries.

Trial was held in the Court of Common Pleas of Laurens County in May, 1963, before the Honorable Steve C. Griffith, and at the close of plaintiff's testimony both parties moved for a directed verdict. The jury was discharged and Judge Griffith, in his Order of August 10, 1963, denied de-

fendant's motion for directed verdict but granted plaintiff's motion and directed that judgment be entered accordingly. This appeal is taken from that Order.

Plaintiff's personal Chevrolet automobile was insured with defendant company, the policy containing an endorsement entitled "Family Protection Against Uninsured Motorists." On May 4, 1962, while said policy was in full force and effect, plaintiff, while driving another automobile owned by a partnership of which he was a partner, was involved in an automobile collision with Kenneth Stone, an uninsured motorist.

On August 8, 1962, plaintiff instituted an action against Stone in the Court of Common Pleas for Laurens County; service was made upon Stone on August 16, 1962. On September 24, 1962, plaintiff notified defendant of the accident and of the fact suit had been instituted, at the same time forwarded a copy of the summons and complaint with an accompanying letter which stated that Stone was in default but that plaintiff would have no objection if the insurance company wished to intervene in its own name. Plaintiff was advised by letter of September 27, 1962, that the insurance company was assigning the matter to a field claims man for investigation and to the company's counsel for defense. During conversations between the lawyers for the respective parties, plaintiff's attorney refused to waive the default and permit an answer to be filed in behalf of Stone. Subsequently, plaintiff's attorney was notified that the file had been withdrawn from the insurance company's attorneys, and that they were no longer interested in the matter.

The case against the uninsured motorist was tried October 30, 1962, in the Court of Common Pleas for Laurens County before Judge William L. Rhodes. Stone, not having answered, offered no defense. After hearing evidence of damages and liability, the jury returned a verdict in favor of plaintiff against Stone in the sum of $10,000.00. Execution was issued and returned *nulla bona* on November 14, 1962.

Plaintiff notified defendant Company of the judgment obtatined and demanded payment thereof, which was refused. This suit was instituted on December 7, 1962, for the sum of $9,915.00, plaintiff having voluntarily reduced his claim to that amount.

By way of answer to the complaint, defendant, in addition to a general denial, denied liability on the grounds that plaintiff had failed to comply with the terms of the policy and that full compliance is a condition precedent to any action against defendant; and further that plaintiff failed to comply with the following provisions of the "Uninsured Motorist Endorsement":

"8. Action Against Company. No, action shall lie against the Company unless, as a condition precedent thereto, the Insured or his legal representative has fully complied with all the terms of this endorsement.

"3. Proof of Claim. As soon as practicable, the Insured or other person making claim shall give to, the Company written proof of claim, under oath if required, including full particulars of the nature and extent of the injuries, treatment, and other details entering into the determination of the amount payable hereunder. * * *

"4. Notice of Legal Action. If, before the Company makes payment of loss hereunder, the Insured or his legal representative shall institute any legal action for bodily injury or property damage against any person or organization legally responsible for the use of an automobile involved in the accident, a copy of the summons and complaint or other process served in connection with such legal action shall be forwarded immediately to the Company by the Insured or his legal representative."

By way of further defense, it is alleged that plaintiff failed to give written notice of the accident as soon as practicable, failed to assist defendant in all respects, and that notice was not given until on or after September 24, 1962.

Plaintiff filed an amended reply in which he admitted that the conditions precedent referred to by defendant were con-

tained in the "Uninsured Motorist Endorsement" but alleged that such conditions are invalid and of no force and effect in that they contravene the statute relating to uninsured motorists' liability. It is further alleged that all conditions precedent have been complied with and that, in addition, defendant has waived compliance with said conditions.

The trial Judge held the Act applicable and that it renders void any provision of the policy or any endorsement thereto that requires more of the insured than to establish liability of the uninsured. Particular stress was placed on that portion of Section 46-750.18 of the Code of Laws of South Carolina, 1962, which reads: "* * * nor may anything be required of the insured except the establishment of legal liability, * * *."

Our Uninsured Motorist Law, prior to the 1963 Amendment, is contained in Section 46-750.11 and Sections 46-750.14 through 46-750.18 of the Code of Laws of South Carolina, 1962. Section 46-750.14 provides that no policy or contract of insurance as described in Section 46-750.13 shall be issued or delivered "unless it contains an endorsement or provisions undertaking to pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle, * * *. * * * Recovery under the endorsement or provisions shall be subject to the conditions set forth in §§ 46-750.15 to 46-750.18."

Sections 46-750.15 and 46-750.16 relate to notice to the Highway Department of the accident in case of unknown drivers and the procedure to be pursued against them as "John Doe" defendants. Section 46-750.17 relates to subrogation rights.

It is provided in Section 46-750.18 as follows:

"No endorsement or provisions required by § 46-750.14 shall contain any provision requiring arbitration of any claim arising under any such endorsement or provisions, nor

may anything be required of the insured except the establishment of legal liability, nor shall the insured be restricted or prevented in any manner from employing legal counsel or instituting legal proceedings."

Although the policy was voluntarily procured by plaintiff, under the provisions of Section 46-750.14 it is mandatory that all bodily injury liability insurance and property damage liability insurance issued or delivered in this State contain an endorsement or provisions to comply with the Uninsured Motorist Act. The trial Judge correctly held that the provisions of the Uninsured Motorist Act apply to this action.

Plaintiff would have us place a construction on the Act to the effect that the conditions relied upon by defendant as being conditions precedent are rendered void by the Act. "It should be kept in mind that the legislative intent must prevail if it can be reasonably discovered in the language used, which must be construed in the light of the intended purpose of the Statutes. One of the primary rules in a construction of a statute is that the words used therein should be taken in their ordinary and popular significance, unless there is something in the statute requiring a different interpretation. *Brewer v. Brewer,* 242 S. C. 9, 129 S. E. (2d) 736." *Laird v. Nationwide Ins. Co.,* 243 S. C. 388, 134 S. E. (2d) 206.

"It is perhaps unnecessary to say that courts have no legislative powers, and in the interpretation and construction of statutes their sole function is to determine, and within the constitutional limits of the legislative power to give effect to, the intention of the Legislature. They cannot read into a statute something that is not within the manifest intention of the Legislature as gathered from the statute itself. To depart from the meaning expressed by the words is to alter the statute, to legislate and not to interpret. The responsibility for the justice or wisdom of legislation rests with the Legislature, and it is the province of

the courts to construe, not to make, the laws. There is a marked distinction between liberal construction of statutes, by which courts, from the language used, the subject-matter, and the purposes of those framing them, find out their true meaning, and the act of a court in ingrafting upon a law something that has been omitted, which the court believes ought to have been embraced. The former is a legitimate and recognized rule of construction, while the latter is judicial legislation, forbidden by the constitutional provisions distributing the powers of government among three departments, the legislative, the executive, and the judicial." *Creech v. South Carolina Public Service Authority,* 200 S. C. 127, 20 S. E. (2d) 645; *Laird v. Nationwide Ins. Co., supra,* 243 S. C. 388, 134 S. E. (2d) 206.

We must now determine whether the Act renders void the conditions of the policy relied upon by defendant. The lower Court relying upon Section 46-750.18 placed a construction upon the Act as requiring nothing of plaintiff other than establishing legal liability of the uninsured. As pointed out in the *Laird case, ibid.,* "Recovery under the uninsured endorsement is subject to the condition that the insured establish legal liability on the part of the uninsured motorist. Such an action is one *ex delicto* and the only issues to be determined therein are the liability and the amount of damage. After judgment is entered against the uninsured motorist, a direct action *ex contractu* can be brought to recover from the insurance company on its endorsement, and policy defenses may be properly raised by the insurance company. *Doe v. Brown,* 203 Va. 508, 125 S. E. (2d) 159; *Rodgers v. Danko,* 204 Va. 140, 129 S. E. (2d) 828."

In the action *ex delicto* against the uninsured motorist, nothing, of course, is required of plaintiff except the establishment of legal liability of the uninsured. Here as in *Matthews v. Allstate Ins. Co.,* D. C., 194 F. Supp. 459, the statute was completely silent on the procedure available to an insurance company to defend a claim under the Unin-

sured Motorist Endorsement provision of the policy. It did not prohibit the insurance company from appearing in behalf of the alleged negligent uninsured motorist, neither did the statute spell out the appropriate procedure to be followed in such case.

This defect in the Act was remedied by the 1963 Amendment to The Uninsured Motorist Act contained in Section 46-750.33 of the Code, 1963 Supplement, which provides: "* * * No, action shall be brought under the Uninsured Motorist Provision unless copies of the pleadings in the action establishing such liability are served in the manner provided by law upon the insurance carrier writing such Uninsured Motorist Provision. The insurance carrier shall have the right to appear and defend in the name of the uninsured motorist in any action which may affect its liability, and shall have twenty days after service of process on it in which to make such appearance. The evidence of service upon the insurance carrier shall not be made a part of the record."

In the *Matthews case* the Court had before it the Virginia Uninsured Motorist Law from which our Act was modeled. The following language relied upon and cited by the lower Court is found therein, 194 F. Supp. at page 465: "* * * The same subsection, § 38.1-381(g), does contain the following language: 'nor may anything be required of the insured except the establishment of legal liability.' These words certainly tend to place the burden upon the insurance company to devise the means whereby it could appear and defend the action against the uninsured motorist. Since the requirement of establishing legal liability of the uninsured motorist has been fully met by the plaintiff herein, the defendant's liability automatically attaches to the extent of the limitations of the policy."

Here the defendant by inserting conditions Nos. 3 and 4 in the "Uninsured Motorist Endorsement" provided for timely notice so that prior to default, it could devise means whereby it could appear and defend the

action against the uninsured motorist. Although the Act contains the phrase "nor may anything be required of the insured except the establishment of legal liability," the legislature never intended by this language to hold an insurance company liable without notice or opportunity to investigate or contest the claim. We conclude that the policy provisions were not in conflict with the terms of the Act and are valid.

The policy provisions, which we have held to be valid, required, as conditions precedent to any right of recovery by the insured, that notice of claim under the uninsured motorist endorsement be given to the company as soon as practicable, and that upon the commencement of legal action a copy of the summons and complaint be forwarded to the insurer immediately. Here, the claim arose on May 4, 1962, and legal action was commenced against the tort feasor on August 8, 1962. The insurance company was notified for the first time on September 24, 1962, when a copy of the summons and complaint was mailed to it, with notice that the tort feasor was in default. These facts are undisputed and clearly amount to a violation of the requirement that upon the commencement of a legal action by the insured a copy of the summons and complaint should be forwarded immediately to the insurer.

No effort was made to establish a reason for plaintiff's failure to comply with the terms of the contract.

Furthermore, plaintiff refused to waive the default and permit an answer to be filed in behalf of the defendant in the tort action. He chose to rest his position upon the rights he had acquired through default which operated to the prejudice of the insurance company. It was in large measure deprived of the opportunity, which compliance by plaintiff would have afforded, to investigate promptly, to negotiate a settlement without the handicap of a default position, or to sponsor the defense of the uninsured motorist, thereby insuring that the amount which plaintiff "shall be legally entitled to recover" be fairly established.

It is well settled that, unless waived by the insurer, the failure of an insured to comply with policy provisions as to notice or forwarding suit papers, which are by the terms of the contract made conditions precedent to liability, will bar recovery. 5A Am. Jur., Automobile Insurance, Section 142, Section 151; *Boyle Road & Bridge Co. v. American Employers' Ins. Co. of Boston, Mass.,* 195 S. C. 397, 11 S. E. (2d) 438.

We find no evidence of waiver sufficient to raise a jury issue. Upon belated receipt of the summons and complaint, the insurance company referred the matter to its counsel. The record indicates that counsel requested an "extension of time," which was granted. Since no action was pending against the insurance company in which time could run, we interpret this to mean that plaintiff agreed not to take a default judgment in the tort action until counsel could investigate and decide what action, if any, should be taken in behalf of the insurance company. Shortly thereafter, counsel notified plaintiff's attorney that the file had been withdrawn from them, and that the insurance company would not intervene.

The insurance Companys' decision not to intervene in the tort action, in which plaintiff was entitled to a judgment by default (upon proof only of the amount of his damages) against the uninsured motorist, was a natural one. That action was *ex delicto,* and the only issues which could be tried in it were those between plaintiff and the tort feasor, who was in default. The insurer's first opportunity to raise "policy defenses" came in this *ex contractu* action against it. *Laird v. Nationwide Ins. Co.,* 243 S. C. 388, 134 S. E. (2d) 206. Its refusal to intervene in the tort action in which these defenses could not have been asserted has no tendency to establish an intention to relinquish the right to rely upon them in this contractual action to which they are appropriate.

For the foregoing reasons, we are of opinion that the judgment and Order appealed from should be reversed and

the case remanded for entry of judgment for defendant; and it is so ordered, reversed and remanded.

Moss, Lewis, Bussey and Brailsford, JJ., concur.