18433

E. J. SQUIRES, as Administrator of Estate of Elnita Shelley Squires, Respondent, v. NATIONAL GRANGE MUTUAL INSURANCE CO., Appellant. Rufus SKIPPER, as Administrator of Estate of Linda Faye Johnson, Respondent, v. NATIONAL GRANGE MUTUAL INSURANCE CO., Appellant.

(145 S. E. (2d) 673)

*Messrs. Wright, Scott, Blackwell & Powers,* of Florence, *for Appellant,*

*H. T. Abbott, Esq.,* of Conway, *for Respondents,*

December 7, 1965.

Moss, Justice.

These two actions, one by E. J. Squires, as Administrator of the Estate of Elnita Shelley Squires, and the other by Rufus Skipper, as Administrator of the Estate of Linda Faye Johnson, the respondents herein, were instituted against National Grange Mutual Insurance Company, the appellant herein, to enforce part payment of certain judgments previously secured by then against Leroy Sessions and Archie Hartley in wrongful death actions. The appellant had lia-

bility and uninsured motorist coverage on the automobile in which respondent's intestates were riding at the time of their deaths.

These cases, along with a companion case, were tried before the Honorable J. B. Ness, Presiding Judge, without a jury. The cases were submitted upon the pleadings and stipulations of fact. Thereafter, by order dated March 26, 1965, the Trial Judge held that the appellant is liable to the respondents as to the verdicts secured against Leroy Sessions only, for a sum not to exceed $10,000.00 each. The appellant gave timely notice of intention to appeal from said order.

The record here reveals that on May 13, 1961, Elnita Shelley Squires, Linda Faye Johnson and Effie Johnson, along with two other women, were passengers in an automobile driven by Lorenzer Bill Squires when it was involved in a head-on collision with an automobile driven by Leroy Sessions, who was engaged in an automobile race upon U. S. Highway No. 17 with an automobile driven by Archie Hartley and an automobile owned by Ila W. Kennedy and driven at the time by John Kennedy. All occupants of the Squires automobile died as a result of injuries received in said collision.

Thereafter, administrators were appointed for the estates of Elnita Shelley Squires, Linda Faye Johnson and Effie Johnson and these administrators, in September, 1961, instituted suits for their wrongful deaths against Leroy Sessions, Archie Hartley and Ila W. Kennedy, Sessions failed to answer the complaints. Kennedy answered and, thereafter, entered into a covenant not to sue with the said administrators and there was paid to each the sum of $2,833.34. Hartley's answer was a general denial.

The case for the wrongful death of Effie Johnson was tried in the Court of Common Pleas for Georgetown County on April 24, 1962, and resulted in a verdict in favor of her administrator against Leroy Sessions for $10,000.00 actual

damages and $15,000.00 punitive damages and against Archie Hartley for $5,000.00 actual damages and $10,000.00 punitive damages. This case was appealed to this court and the judgment of the lower court was affirmed. We held that all who engage in an automobile race upon a public highway are jointly and concurrently liable for an injury sustained by a third person as a result thereof, regardless of which of the racing cars actually inflicted the injury. *Skipper v. Hartley,* 242 S. C. 221, 130 S. E. (2d) 486.

The record shows that on May 13, 1961, when Elnita Shelley Squires, Linda Faye Johnson and Effie Johnson lost their lives as a result of a head-on collision with an automobile driven by Leroy Sessions and at the time the actions were commenced for their wrongful deaths, Leroy Sessions and Archie Hartley were driving automobiles covered by liability insurance with Universal Insurance Company and the car owned by Ila W. Kennedy and driven by John Kennedy was insured by The Boston-Old Colony Insurance Company. It thus appears that all of the defendants in the original wrongful death actions were operators of insured motor vehicles.

It further appears that sometime after the accident of May 13, 1961, and prior to the trial of the Effie Johnson case on April 24, 1962, that Universal Insurance Company, through its attorneys, notified the attorneys for the respondents here of the denial of coverage as to Leroy Sessions under its policy because of the misstatements in his application. It appears that on April 23, 1962, one day prior to the trial of the Effie Johnson case, that counsel for the respondents wrote to the appellant as follows:

"I realize that you have already been advised of this accident, in that the medical on both of these policies has been paid; however, the copies of these complaints are forwarded to you due to the fact that the insurance carrier for the defendant Leroy Sessions has denied liability in connection with these cases. Under the uninsured motorist law, I thought it well that you have a copy of these complaints for your file."

In response to the foregoing letter the appellant, on May 1, 1962, wrote the respondents and their attorney denying that the coverage of their policy extended to respondents' intestates in connection with the accident or to Leroy Sessions because the respondents had violated a condition of the policy by failing to immediately forward copies of the suit papers to it when the suits were instituted and upon the further ground that Sessions was not an uninsured motorist.

Universal Insurance Company was placed in receivership during the fall of 1962 pursuant to a proceeding which was instituted on August 9, 1962.

The wrongful death actions brought by the administrators of the estates of Elnita Shelley Squires and Linda Faye Johnson were called for trial at the 1962 September term of the Court of Common Pleas for Georgetown County but were continued because the attorneys for Universal Insurance Company, who were representing Hartley, asked to be allowed to withdraw. These cases were again continued at the October term of court when these attorneys advised that they had withdrawn. At the December 1962 term of court these two cases were called for trial and default judgments taken for $15,000.00 actual damages against Sessions and Hartley in the *Squires case,* and $12,500.00 actual damages against Sessions and Hartley in the Linda Faye Johnson case.

At the time of the collision which resulted in the death of respondents' intestates, there was in force and effect an automobile liability insurance policy issued by the appellant to Lorenzer Bill Squires. Attached to and forming a part of this policy was the uninsured motorist endorsement written in compliance with Sections 46-750.13 and 46-750.14 of the Code, providing for the payment of all sums which the insured shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile, with a limit of $10,000.00 for the death of one person and

a maximum of $20,000.00 for the death of two or more persons in any one accident.

The present actions were brought by the respondents against the appellant to enforce the payment of the judgments obtained by them against Leroy Sessions and Archie Hartley under the uninsured motorist coverage of the aforesaid policy on the automobile in which they were riding at the time of their death. It was alleged in the complaint that the automobiles of Sessions and Hartley were uninsured motor vehicles as defined by Section 46-750.11(3), as amended, of the Code.

The answer of the appellant, in addition to a general denial, denied liability on the grounds that the respondents had failed to comply with the terms of the policy and that full compliance is a condition precedent to any action against it. It was further alleged that the respondents failed to comply with the following provisions and conditions of the uninsured motorist endorsement:

"2. *Proof of Claim.* As soon as practicable, the insured or other person making claim shall give to the company written proof of claim, under oath if required, including full particulars of the nature and extent of the injuries, treatment, and other details entering into the determination of the amount payable hereunder. Proof of claim shall be made upon forms furnished by the company unless the company shall have failed to furnish such forms within 15 days after receiving notice of claim.

"3. *Notice of Legal Action.* If, before the company makes payment of loss hereunder, the insured or his legal representative shall institute any legal action for bodily injury or property damage against any person or organization legally responsible for the use of an automobile involved in the accident, a copy of the summons and complaint or other process served in connection with such legal action shall be forwarded immediately to the company by the insured or his legal representative.

*"7. Action Against Company.* No action shall lie against the company unless, as a condition precededent thereto, the insured or his legal representative has fully complied with all the terms of this endorsement."

By way of further defense, it is alleged that the respondents failed to give written notice of the accident as soon as practicable, as required by condition No. 2 of said uninsured motorist endorsement; and that in violation of condition No. 3, the respondents failed to immediately forward the summonses and complaints in their actions against the several defendants heretofore mentioned. It is affirmatively alleged that the plaintiffs in the wrongful death actions did not forward the summonses and complaints in said actions to the appellant until April 23, 1962, at which time Sessions was in default and the insurance carrier for Hartley was in receivership and unable to respond to judgment, all to the prejudice of the appellant.

Respondents' intestates were insureds, as such term is used in Section 46-750.14 of the Code, because they were riding as guests in the motor vehicle to which the aforesaid policy applied. The automobile driven and operated by Leroy Sessions became an uninsured motor vehicle when Universal Insurance Company, which had issued an insurance policy thereon, denied coverage thereunder. Section 46-750.11(3) of the Code.

Recovery under the uninsured motorist endorsement of liability is subject to the condition that the insured establish legal liability on the part of the uninsured motorist, and such action is one *ex delicto* and the only issues to be determined therein are the liability and the amount of damages. After judgment is entered against the uninsured motorist a direct action *ex contractu* can be brought by insured to recover from insurer on its uninsured motorist endorsement and policy defenses may be properly raised by the insurer. *Laird v. Nationwide Ins. Co.,* 243 S. C. 388, 134 S. E. (2d) 206, and *Hatchett v. Nationwide*

*Mutual Ins. Co.,* 244 S. C. 425, 137 S. E. (2d) 608. The respondents here, in the wrongful death actions, have established legal liability on the part of the uninsured motorist and the amount of damage sustained. The present actions are *ex contractu* to recover on the uninsured motorist endorsement and the appellant has asserted the policy defenses heretofore set out.

It is well settled that, unless waived by the insurer, the failure of an insured to comply with policy provisions as to notice or forwarding suit papers, which are by the terms of the contract made conditions precedent to liability, will bar recovery. *Hatchett v. Nationwide Mutual Ins. Co.,* 244 S. C. 425, 137 S. E. (2d) 608.

The burden of proof is upon the insurer to show not only that the insured has failed to perform the terms and conditions invoked upon him by the policy contract but in additon that it was substantially prejudiced thereby. *Pharr v. Canal Ins. Co.,* 233 S. C. 266, 104 S. E. (2d) 394, and *Crook v. State Farm Mutual Ins. Co.,* 235 S. C. 452, 112 S. E. (2d) 241.

The appellant asserts that it has no liability to the respondents because in violation of condition No. 2, "Proof of Claim" was not given to it "as soon as practicable" as required under the uninsured motorist endorsement. The appellant argues that the furnishing of the verified complaints to it approximately six months after the institution of the action against the uninsured motorist did not constitute substantial compliance with the requirement that proof of claim be furnished insurer as soon as practicable.

We had occasion in *Brown v. State Farm Mut. Ins. Co.,* 233 S. C. 376, 104 S. E. (2d) 673, to discuss the meaning and construction of the term "as soon as practicable" as such is used in the notice clause of an insurance policy. There, we said:

"The time words in the clause, 'as soon as practicable' are not words of precise and definite import. They are roomy

words. They provide for more or less free play. They are in their nature ambulatory and subject under the guiding rule, to the impact of particular facts on particular cases. They do not in terms require immediate notice or notice within a particular number of days. They may not be so construed, they do not even provide for notice 'as soon as possible.' In terms, they require notice 'as soon as practicable' and they must be construed as requiring the notice within a reasonable time under all the circumstances, to effectuate the objects and purposes of the notice clause."

The uninsured motorist endorsement becomes operative, not when there has been an accident, but when it is ascertained that the operator was uninsured. Where the uninsured motorist endorsement provides for notice "as soon as practicable", this should be interpreted as if it read "as soon as practicable after discovery of the uninsured status" and means within a reasonable time under all of the circumstances if the insured was reasonably diligent in his efforts to determne the insurance status of his adversary. *Brown v. Motor Vehicle Accident Indemnification Corp.*, 24 Misc. (2d) 550, 206 N. Y. S. (2d) 294. In the case of *Allstate Ins. Co. v. Jahrling,* 16 A. D. (2d) 501, 229 N. Y. S. (2d) 707, it was held that an insured who made diligent effort to ascertain whether other vehicle involved in collision in another state resulting in death of her son while driving insured automobile, was covered by insurance and who notified insurer upon learning details of the accident about eleven months later, gave notice to insurer "as soon as practicable" within requirements of uninsured motorist endorsement of liability policy.

The automobile of Leroy Sessions became an uninsured motor vehicle when Universal denied coverage thereon. This status is not determined as of the date of the collision but is fixed as of the time when the insurer denied coverage under its liability policy. *North River Ins. Co. v. Gibson,* 244 S. C. 393, 137 S. E. (2d) 264. It follows that there was no reason for the respondents here to notify

the appellant of a claim under its uninsured motorist endorsement prior to denial of coverage by the insurer of the automobile of Sessions. However, the duty was imposed upon the respondents to give notice to the appellant as soon as practicable after discovery of the uninsured status of Sessions. This record does not reveal the date of the notice of the denial of coverage. The Trial Judge found that the insurance carrier for Sessions notified the respondents of its denial of coverage as to him, at which time or shortly thereafter, respondents' attorneys notified the appellant of the claim under uninsured motorist endorsement. We cannot say upon the record before us, and in the light of the admitted facts, that this holding was erroneous.

The appellant asserts that it has no liability to the respondents because in violation of condition No. 3, "Notice of Legal Actions", the respondents failed to have served on it copies of the summonses and complaints served in connection with such legal action in the wrongful death cases against Sessions.

The obvious purpose of the "Notice of Legal Action" provision is to give the insurance company notice of the institution of a suit by its insured against an uninsured motorist, in order that the insurer may inquire into the matter and take such steps as it deems necessary to protect its interest. It is vitally interested in such a suit in two ways. Under the terms of its policy it will have to pay whatever judgment its insured may recover against the uninsured motorist within the limits of its statutory liability. Under Section 46-750.17 of the Code, upon the payment of such claim it is subrogated to the rights of its insured against such uninsured motorist. Condition No. 3 of the policy here in question was so construed in *State Farm Mut. Automobile Ins. Co. v. Duncan*, 203 Va. 440, 125 S. E. (2d) 154. In *Hatchett v. Nationwide Mut. Ins. Co.*, 244 S. C. 425, 137 S. E. (2d) 608, we held that the action of insured in failing to notify automobile liability insurer of institution of action against uninsured motorist until after such motorist was in default vio-

lated policy requirements of immediate forwarding of a copy of summons and complaint in action against uninsured motorist, and defeated insured's right to recover under uninsured motorist coverage.

In the present case, at the time of the injury to and death of the respondents' intestates, Sessions was an insured motorist who, became an uninsured motorist when his insurer denied coverage. The *Hatchett case* is not here controlling because the judgment there involved was obtained against one Stone who was an uninsured motorist at the time the said Hatchett received his personal injuries. Notice of the commencement of the wrongful death actions was given to the appellant when Sessions became an uninsured motorist. This met the requirement of condition No. 3 of the uninsured motorist endorsement.

The Trial Judge held that since the respondents are entitled to recover under the appellant's uninsured motorist endorsement only as to Sessions that it was not necessary for him to determine the limits of recovery. He did find and hold that the appellant was liable to the respondents as to the verdicts secured against Sessions only "for a sum not to exceed Ten Thousand ($10,000.00) Dollars each."

The appellant asserts that the Trial Judge should have determined the amount of recovery to which the respondents were entitled and that his failure so to do was error. The appellant contends that the amount paid to. the respondents, which was $2,833.34, by the liability insurance carrier for Ila W. Kennedy, under covenants not to sue, should be credited against the liability of the appellant to the respondents under the uninsured motorist endorsement. The basis of the claim by the appellant that the aforesaid amounts should be credited against its liability to the respondents under the uninsured motorist endorsement is provided for by the "other insurance" provision of the said endorsement.

The Trial Judge in his order stated that the question as to whether the amounts paid under the covenants not to sue

should or should not be credited was not argued and that he expressed no opinion thereabout.

The record shows that question 4 of the appellant's ██ ██ brief in the Circuit Court raised the issue that if the respondents were entitled to benefits under the appellant's uninsured motorist endorsement "just what or how much are they entitled to.?" The foregoing question was a vital one so far as the appellant is concerned, and without a decision on it, neither the appellant nor the respondents could know just what the amount of the judgment was. This question should have been decided by the lower Court because a final money judgment must be certain and definite as to the amount thereof. *Barron v. Southern Scale & Fixture Co.,* 106 S. C. 342, 91 S. E. 321.

We conclude that the lower Court correctly disposed of the issues as to whether the respondents had failed to comply with the conditions of the uninsured motorist endorsement in giving notice to the appellant. However, we think the lower Court committed error in not determining the amount of the judgment to which the respondents were entitled against the appellant. Of necessity, this requires the Court to determine the question as to whether the amounts paid under the covenants not to sue should or should not be credited against the liability of the appellant to the respondents. Upon this issue we express no opinion.

Affirmed in part and reversed in part and remanded.

TAYLOR, C. J., and LEWIS, BUSSEY and BRAILSFORD, JJ., concur.