**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-1282**

FOUNDERS INSURANCE COMPANY,

Plaintiff - Appellee,

v.

RICHARD RUTH'S BAR & GRILL LLC; RICHARD RUTH, SR.; JANE RUTH; GEORGE GIANNARAS, on behalf of Emmanuel Kehagias, as Guardian for Emmanuel Kehagias,

Defendants - Appellants,

and

HULL & COMPANY INC; BROWN & BROWN, INCORPORATED,

Defendants.

Appeal from the United States District Court for the District of South Carolina, at Charleston. David C. Norton, District Judge. (2:13-cv-03035-DCN)

Argued: December 11, 2018                    Decided: February 21, 2019

Before NIEMEYER, DUNCAN and QUATTLEBAUM, Circuit Judges.

Affirmed by unpublished opinion. Judge Quattlebaum wrote the opinion, in which Judge Niemeyer and Judge Duncan joined.

**ARGUED:** Kevin Roger Eberle, EBERLE LAW FIRM, LLC, Charleston, South Carolina, for Appellants. Russell Frank Conn, CONN KAVANAUGH ROSENTHAL PEISCH & FORD, Boston, Massachusetts, for Appellee. **ON BRIEF**: Andrew Watson, BUTLER WEIHMULLER KATZ CRAIG LLP, Charlotte, North Carolina; M. Dawes Cooke, Jr., John W. Fletcher, Jeffrey M. Bogdan, BARNWELL WHALEY PATTERSON & HELMS, LLC, Charleston, South Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

QUATTLEBAUM, Circuit Judge:

Founders Insurance Company ("Founders") brought this action against Richard Ruth's Bar and Grill, LLC ("Ruth's Bar"), Richard Ruth, Jane Ruth, George Giannaras and others seeking a declaration that Founders is not required to indemnify Ruth's Bar for damages resulting from a bar fight in September 2012. The district court granted summary judgment in favor of Founders finding that Ruth's Bar failed to comply with the notice provisions of the insurance policy, which caused substantial prejudice to Founders. For the following reasons, we affirm.[1]

I.

On September 29, 2012, a bar patron assaulted Emmanuel Kehagias at Ruth's Bar leaving Kehagias in a permanent, quasi-vegetative state. George Giannaras, Kehagias' brother-in-law, was subsequently appointed as Kehagias' legal guardian.[2] Kehagias later

---

[1] This case originally came before us as a consolidated appeal involving both this declaratory judgment action and Kehagias' appeal relating to his bad faith action against Founders (No. 17-1284). The two actions were consolidated at the district court. The district court entered judgment in favor of Founders in the declaratory judgment action and granted in part and denied in part Founders' motion for summary judgment in the bad faith action. Kehagias appealed the orders in both actions, and Founders cross-appealed the order in the bad faith action. Founders moved to dismiss both appeals as interlocutory, but subsequently moved to withdraw the motion to dismiss the declaratory judgment appeal. We granted the motion to withdraw and decide the matters raised in the declaratory judgment appeal (No. 17-1282) in this opinion. However, we granted the motion to dismiss the appeal in the bad faith action (No. 17-1284) and dismissed Founders' cross-appeal in the bad faith action. (Nos. 17-1344 and 17-1348).

[2] Throughout this opinion, we will use "Kehagias" to refer to both Mr. Kehagias personally and his guardian.

filed a negligence lawsuit against Ruth's Bar and its owners to recover for damages resulting from the assault.

Richard Ruth is the owner of Ruth's Bar, which is located in Mount Pleasant, South Carolina. He operates the bar along with his wife, Jane Ruth. The Ruths[3] bought a commercial general liability policy and a liquor liability policy (the "Policies") from Founders to insure Ruth's Bar. Founders does not sell insurance directly to consumers. Instead, Founders uses insurance wholesalers to market and sell its insurance policies through local, independent agents. In this case, the insurance wholesaler, Hull & Company, Inc. ("Hull"), sold the Policies to Cherie DuMez, the Ruths' longtime insurance agent. The Ruths obtained the Policies from DuMez.

The Policies required the Ruths to notify Founders as soon as practicable of any occurrence which might result in a claim against the insured. Additionally, the Policies required the Ruths to notify Founders of any claim made against the insured and of any suit brought against the insured. The Policies also required the Ruths to provide Founders with copies of any demands, notices, summonses, or legal papers received in connection with any claim or suit. It is undisputed that the Ruths did not notify Founders, Hull or DuMez of Kehagias' injuries when they occurred in September 2012. However, the Ruths did forward a notice of representation letter that Kehagias' attorney sent to the Ruths on November 21, 2012. The Ruths sent the notice of representation letter to

---

[3] Throughout this opinion, we will use "the Ruths" to refer to Mr. and Mrs. Ruth collectively and to Ruth's Bar to the extent that Mr. and Mrs. Ruth were acting in a representative capacity.

4

DuMez who forwarded the notice to Hull. Hull received the notice of representation letter on November 27, 2012.

On December 19, 2012, Kehagias filed a negligence suit in South Carolina state court against Ruth's Bar, Mr. Ruth, Mrs. Ruth and others. The next day, Kehagias' attorney sent copies of the summons and complaint to the Ruths with a letter requesting that the Ruths forward the legal papers to their insurer or legal representative.[4] However, the Ruths did not forward the legal papers to Founders or Hull. Although the Ruths claim they forwarded the legal papers to DuMez, there is no evidence indicating that either the Ruths or DuMez forwarded the legal papers to either Hull or Founders upon receipt. In fact, Founders did not receive the legal papers until May 2013.[5]

On February 11, 2013, Kehagias asked the state trial court to enter default against Ruth's Bar because the Ruths never filed an answer to the lawsuit on its behalf. The state court entered default against Ruth's Bar on February 22, 2013, and referred the matter for

---

[4] On January 8, 2013, Kehagias formally served the state court summons and complaint on the Ruths.

[5] In response to Founders' motion for summary judgment, Kehagias submitted an affidavit from Mrs. Ruth stating that she provided copies of Kehagias' summons and complaint to DuMez, the Ruths' local insurance agent. The district court did not consider the affidavit because it contradicted Mrs. Ruth's prior deposition testimony. We need not address whether the district court properly excluded Mrs. Ruth's affidavit because it does not affect the outcome of this case. Even if we assume Mrs. Ruth provided the legal papers to DuMez, there is no evidence that DuMez is Founders' agent for the purposes of receiving notice, and there is no evidence that DuMez forwarded the legal papers to Founders or Hull. In fact, DuMez testified she never received the legal papers from Mrs. Ruth.

a hearing on damages. Thereafter, on May 14, 2013, Hull contacted Founders regarding the notice of representation letter from Kehagias' attorney. Founders assigned an adjuster two days later. On May 16, 2013, the adjuster obtained the summons and complaint from the Ruths after contacting them about the case.

After receiving the legal papers, Founders hired an attorney to defend the Ruths in the underlying state court action. The Ruths' attorney asked Kehagias to consent to relief from the entry of default, but Kehagias refused. The Ruths' attorney then filed a motion to set aside the default, which the state court denied. On April 25, 2014, the state court issued an order of judgment against both Ruth's Bar and the Ruths individually awarding five million dollars in damages to Kehagias.

The Ruths appealed the judgment. The Ruths then assigned Kehagias their rights against Founders in return for a covenant not to execute the judgment. After the assignment, the Ruths instructed Founders to withdraw the appeal in the state appellate courts, and Founders complied. On November 25, 2014, the state trial court entered final judgment against the Ruths.

In the interim, in November 2013, Founders filed a declaratory judgment action in federal court against Ruth's Bar, the Ruths individually and Kehagias, among others. Kehagias answered the complaint and asserted counterclaims[6] against Founders. The district court granted summary judgment to Founders on all of Founders' declaratory

---

[6] The only counterclaim at issue in this appeal is Kehagias' claim for medical payments under Coverage C of the commercial general liability policy.

judgment claims and on Kehagias' counterclaims. Kehagias appeals the district court's decision to grant summary judgment to Founders. We have jurisdiction of this appeal in accordance with 28 U.S.C. § 1291.

## II.

We review the district court's decision to grant summary judgment de novo. *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018). When considering a motion for summary judgment, courts must view the evidence in the light most favorable to the nonmoving party. *Id.* "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if a reasonable jury could return a verdict for the nonmoving party, and a fact is material if it could affect the outcome of the case under governing law. *Variety Stores,* 888 F.3d at 659 (citing *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568 (4th Cir. 2015)). Once a party moves for summary judgment, the nonmoving party has the burden to offer sufficient proof in the form of admissible evidence to show that there is a genuine issue of material fact for trial. *Id.* (citing *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016)). When the nonmoving party fails to meet this burden, summary judgment is appropriate. Fed. R. Civ. P. 56(a).

## III.

Kehagias appeals the district court's order granting summary judgment on two grounds. First, Kehagias argues the district court erred by granting summary judgment to Founders on its declaratory judgment claim finding Founders is not required to indemnify

7

Ruth's Bar under the Policies. Second, Kehagias claims that the court erred in granting summary judgment to Founders on Kehagias' counterclaim for medical payments under the Policies. Both parties agree that South Carolina law governs the disposition of this case. We apply the law of South Carolina in resolving this appeal. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) ("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state.").

## A.

We first address whether the district court properly granted summary judgment to Founders on its declaratory judgment claim. The district court found that the Ruths breached the terms of the Polices when they failed to provide Founders with notice of Kehagias' lawsuit. The district court concluded this breach caused substantial prejudice to Founders' rights and, consequently, Founders has no duty to indemnify the Ruths under the Policies. Kehagias argues that the court erred in granting summary judgment because the Ruths complied with the notice provisions of the policy by providing Founders with the notice of representation letter from Kehagias' attorney in November 2012. Kehagias further claims that even if the Ruths did not technically comply with the notice provisions of the Policies, Founders suffered no prejudice due to their noncompliance.

"It is well settled that, unless waived by the insurer, the failure of an insured to comply with policy provisions as to notice or forwarding suit papers, which are by the terms of the contract made conditions precedent to liability, will bar recovery." *Hatchett*

8

*v. Nationwide Mut. Ins. Co.*, 244 S.C. 425, 435, 137 S.E.2d 608, 613 (1964). The purpose of a notice requirement in an insurance policy is to allow for investigation of the facts and to assist the insurer in preparing a defense. *Vermont Mut. Ins. Co. v. Singleton*, 316 S.C. 5, 11, 446 S.E.2d 417, 421 (1994). Although the failure of the insured to comply with a notice requirement may bar recovery by the insured, where the rights of innocent parties are threatened by a failure of the insured to comply with the notice requirements of the policy, the insurer must show that its rights have been substantially prejudiced by the insured's failure to provide notice before recovery is barred. *Id.* at 12, 446 S.E.2d at 421. Therefore, we must first look to see whether the Ruths breached the notice provisions of the Policies. Second, we must examine whether Founders was substantially prejudiced by the Ruths' failure to comply with the notice provisions of the Policies.

1.

We first address whether the Ruths failed to comply with the relevant policy provisions regarding notice to the insurer and forwarding of legal papers. The Policies required the Ruths to provide Founders with notice of any lawsuit filed against them. The commercial general liability policy required the Ruths to notify Founders "as soon as practicable" if "a claim is made or 'suit' is brought against any insured[.]" J.A. 493. In addition, the commercial general liability policy required the Ruths to "immediately send [Founders] copies of any demands, notices, summons or legal papers received in connection with the claim or 'suit'[.]" J.A. 493. The liquor liability policy also required the Ruths to provide written notice of a claim or suit and to provide Founders with

9

"copies of any demands, notices, summonses, or legal papers received in connection with the claim or 'suit' within seventy-two (72) hours[.]" J.A. 511.

Here, Founders did not receive notice of the lawsuit or copies of the legal papers until after the state court entered default in favor of Kehagias. There are no facts in the record indicating that Founders ever received notice that Kehagias filed a lawsuit prior to the entry of default. Additionally, there are no facts indicating that Founders received copies of the legal papers prior to the entry of default.

Even so, Kehagias argues that the Ruths provided Founders with sufficient notice under the Policies by forwarding the notice of representation letter sent by Kehagias' attorney. Because Hull received the notice of representation letter prior to the entry of default in the underlying action, Kehagias argues Founders was on notice of a potential claim under the policy. However, this argument is misplaced. Even where an insurer has actual knowledge of a potential claim or occurrence triggering coverage under the policy, the insured is not relieved of his contractual obligation to provide the legal papers to the insurer unless the insurer waives that policy provision. *See Merit Ins. Co. v. Koza*, 274 S.C. 362, 365−66, 264 S.E.2d 146, 148 (1980) (holding that an insurer's knowledge of process being served did not constitute waiver of insured's contractual obligation to forward legal papers). Based on the Policies, the Ruths were required to provide Founders with notice that Kehagias filed a lawsuit and to forward the legal papers to Founders. The Ruths were not relieved of that contractual obligation because they forwarded Founders the notice of representation letter from Kehagias' attorney, which simply constitutes notice of a potential claim. Furthermore, we find no evidence in the

10

record indicating that Founders waived any notice provisions under the policy. Accordingly, we find there is no genuine issue of material fact as to whether the Ruths breached the Policies by failing to provide Founders with notice of the underlying lawsuit and by failing to forward the legal papers to Founders.

2.

Because we find the Ruths breached the notice provisions of the Policies, we now address whether Founders' rights were substantially prejudiced by the Ruths' failure to provide notice.

Under South Carolina law, "prejudice is clearly established by the fact that a default judgment was entered against the insured" in the underlying lawsuit. *Koza*, 274 S.C. at 364, 274 S.E.2d at 147 (citing *Hargrove v. CNA Insurance Group*, 228 Pa. Super. 336, 340, 323 A.2d 785, 787 (1974)). Although South Carolina appellate courts have never held the entry of default alone clearly establishes prejudice, the South Carolina Supreme Court has offered guidance on how prejudice to an insurer can arise through the entry of default. *See Hatchett v. Nationwide Mut. Ins. Co.*, 244 S.C. 425, 434, 137 S.E.2d 608, 612−13 (1964). We find *Hatchett* instructive.

In *Hatchett*, the insured was involved in an accident and had uninsured motorist coverage through Nationwide. *Id*. at 428, 137 S.E.2d at 609. The insured filed suit against the other driver, an uninsured motorist, but he did not notify Nationwide of the suit until after the driver was in default. *Id*. at 428, 137 S.E.2d at 609−10. The insured then refused to waive the default and allow Nationwide to file an answer on behalf of the driver. *Id*. at 428, 137 S.E.2d at 610. At this point, Nationwide withdrew from participation in the

11

defense. *Id*. at 428, 137 S.E.2d at 610. A jury subsequently returned a verdict in favor of the insured, and Nationwide denied coverage on the grounds that the insured failed to provide notice of the accident and suit as required by the policy. *Id*. at 428−29, 137 S.E.2d at 610. The insured then sued Nationwide seeking coverage for the default judgment. *Id*. at 427, 137 S.E.2d at 609. After the trial court directed a verdict for the insured, Nationwide appealed. *Id*. at 427−28, 137 S.E.2d at 609.

In overturning the trial court, the South Carolina Supreme Court noted the following: (1) the insured made no effort to establish a reason for his failure to comply with the insurance contract; (2) the insured refused to waive the default and permit Nationwide to file an answer on behalf of the defendant in the underlying action; and (3) the insured "chose to rest his position upon the rights he had acquired through default which operated *to the prejudice* of the insurance company." *Id*. at 434, 137 S.E.2d at 613 (emphasis added). The court further explained that the insured's failure to comply with the policy and provide timely notice of the suit deprived Nationwide of the opportunity "to investigate promptly, to negotiate a settlement without the handicap of a default position, or to sponsor the defense of the uninsured motorist . . . ." *Id*. at 434, 137 S.E.2d at 613.

Here, as in *Hatchett*, Founders did not receive notice of Kehagias' lawsuit until the Ruths were in default in the underlying action. Kehagias then refused to waive the default after Founders undertook its defense obligations under the Policies, and the state court denied the Ruths' motion to set aside the default. Because Founders was unable to obtain relief from default, Founders did not have the opportunity to properly investigate the

12

case, to raise defenses to the lawsuit or to negotiate a settlement without the handicap of the default position. This, in turn, led to the entry of a five million dollar default judgment against the Ruths. The Ruths' attorney appealed, but the Ruths instructed their attorney to withdraw the appeal after they assigned Kehagias their rights against Founders. Based on these facts, we find there is no genuine issue of material fact as to whether Founders' rights were substantially prejudiced by the Ruths' failure to provide notice of the lawsuit and copies of the legal papers. Therefore, summary judgment is appropriate in favor of Founders.

B.

Kehagias next claims that the district court erred in granting summary judgment to Founders on Kehagias' counterclaim for medical payments under the Policies. We find Founders is entitled to summary judgment on this claim as well.

Coverage C under the commercial general liability Policy contains Medical Payments coverage of five thousand dollars provided that "expenses are incurred and reported to us within one year of the date of the accident[.]" J.A. 489. Kehagias contends that he complied with the terms of the policy because the offer of compromise he sent to Founders included evidence that Kehagias' medical bills far exceeded five thousand dollars. Founders contends that it is not required to provide coverage for medical payments because Kehagias refused to provide medical bills to Founders even after Founders specifically requested the medical bills.

Founders provided Kehagias with copies of the Policies on August 9, 2013. On August 27, 2013, Kehagias submitted a settlement demand which included Kehagias'

13

medical discharge forms, but not medical bills showing he incurred medical expenses. In response, Founders requested copies of the medial bills and an extension of time to respond to the demand. Kehagias denied both requests. As a result, Kehagias failed to provide documentation showing that he had incurred medial expenses within one year of the accident as required by the Policies. Kehagias does not contest the fact that he failed to provide the medical bills within one year of the accident. He simply argues that his failure to provide proof that he incurred medical expenses is not controlling because Founders was not prejudiced by his failure to provide the medical bills. We find this argument unpersuasive.

An insurer must show substantial prejudice "[w]here the rights of innocent third parties are jeopardized by a failure of the insured to comply with the . . . requirements of an insurance policy . . . ." *Vermont Mut. Ins. Co.*, 316 S.C. at 12, 446 S.E.2d at 421 (citing *Factory Mut. Ins. Co. v. Kennedy*, 256 S.C. 376, 182 S.E.2d 727 (1971)). Kehagias was not an innocent third party in this instance, and his rights were not jeopardized by the insured. Rather, Founders denied coverage because Kehagias himself refused to provide medical bills after Founders specifically requested the medical bills directly from Kehagias' attorney. Kehagias cannot now claim that he is an innocent third party when his own failure to provide medical bills led to the denial of coverage. Therefore, we find there is no genuine factual issue as to whether Kehagias failed to report his medical expenses, and Founders is entitled to judgment as a matter of law.

14

## IV.

For the foregoing reasons, we find there is no genuine issue of material fact regarding whether the Ruths failed to comply with the relevant provision of the Policies and whether Founders' rights were substantially prejudiced by the Ruths' noncompliance. Accordingly, Founders is entitled to summary judgment on its declaratory judgment claim and on Kehagias' claim for medical payments. The order of the district court is

*AFFIRMED*.