19745

Marcia C. WHITTINGTON, Executrix, Estate of Robert A Whittington, Respondent, v. RANGER INSURANCE COMPANY, Appellant.

(201 S. E. (2d) 620)

*Joseph R. Young, Esq.,* of *Young, Clement & Rivers,* Charleston, *for Appellant,* cites:

*Rodney A. Peeples, Esq.,* of *Blatt, Fales & Peeples,* of *Bedingfield & Loadbolt,* Barnwell, *for Respondent,* cites:

December 19, 1973.

BUSSEY, Justice:

On April 16, 1969, plaintiff's testate, Robert A. Whittington, came to his death as the result of an airplane accident at Goat Island, Lake Marion, South Carolina, the airplane being piloted by one Osborne L. Hysell. Subsequently, plaintiff obtained a judgment against the said Hysell for the conscious pain and suffering of the deceased in the amount of $12,268.11. In the instant action, plaintiff seeks to recover the sum of $10,000.00, from the defendant insurer, Ranger, asserting that the plane involved in the crash was afforded liability coverage under an aviation policy issued by said insurer to Hyfield Machinery Sales and Rental Company, Inc. of Varnville, South Carolina, of which corporation the said Hysell was president. Upon trial, the jury returned a verdict in favor of plaintiff and the insurer now appeals contending that the court erred in denying its motions for nonsuit, directed verdict and judgment *n.o.v.*

It is elementary that in the consideration of this appeal all of the evidence and the inferences reasonably deducible therefrom have to be viewed in the light most favorable to the plaintiff. The evidence and the reasonable inferences therefrom are accordingly stated in the light of such principle. The policy sued upon insured a Champion Catabria aircraft, owned by Hyfield Machinery Sales and Rental Company, Inc., but the plane flown by Hysell at the time of the accident was a Cessna 172 aircraft owned by Hampton-Varnville Flying Club of which club Hysell was a member.

Under one clause of Ranger's policy, liability coverage was afforded with respect to the "Temporary use of substitute aircraft". Under the provisions of this clause, if the Champion aircraft was "withdrawn from normal use because of its breakdown, servicing, loss or destruction" at the time of the accident and the Cessna was being "temporarily used as

a substitute" for the Champion, then the policy afforded coverage. The pivotal question in the case is whether or not the Champion was at the time "withdrawn from normal use because of its breakdown" within the meaning and intent of the policy provision.

The Champion airplane was purchased by Hyfield new during December 1968, but, after only six flying hours, it developed that the engine was defective, the same being replaced by the manufacturer in late December. Shortly thereafter, the battery charger system became inoperative with the result that certain work was done on the alternator by a mechanic who discovered that the voltage regulator had moisture in it. The mechanic regarded the repairs as minor, complete and satisfactory. As far as the record shows, no further difficulty was had with the Champion plane until April 16, 1969, the date of the fatal accident. On that date, Hysell flew the Champion from Goat Island to the Hampton airport for the purpose of picking up the deceased Whittington to take the said Whittington back to Goat Island to go fishing. Hysell and Whittington boarded the Champion plane with their tackle with the purpose of taking off for Goat Island, but Hysell's efforts to crank the Champion were unsuccessful.

After a few minutes of unsuccessful effort, Hysell ceased his attempts to start the plane because he knew the battery wouldn't hold up too long. The Champion could be cranked by hand by one who knew how, but Hysell did not. Upon his being unable to start the Champion, Hysell went to a nearby hangar where he removed the Cessna 172 plane, one of two belonging to the Flying Club, in which he then flew to Goat Island with Whittington as a passenger. The fatal crash occurred on the return trip that evening. The evidence is undisputed that but for Hysell's inability to start the Champion, it, instead of the Cessna, would have been flown on the trip to Goat Island.

Hysell survived the crash but was hospitalized for a time.

There is no evidence that the Champion was flown or used by anyone else while the Cessna was being used in its stead, and at least inferentially, the Champion was not flown again for quite some time after it failed to start on April 16th. There is no evidence of any repairs being made to the Champion, but the first person to start it after the 16th of April did not recall just how much difficulty, if any, he had in starting it. There is evidence from which it might be inferred that there was nothing mechanically wrong with the Champion but that Hysell was unable to start it either because it was too hot or because he thinned out his fuel mixture too much when he brought the plane in for a landing. Hysell, as a member of the Flying Club, had access to the planes belonging to the Club at any time he desired and was apparently one of the chief users of the Cessna 172, but was also a principal user of the Champion which he would have been flying but for his inability to start it.

■ It is elementary and requires no citation of authority that the provisions of an insurance policy are to be liberally construed in favor of the insured and strictly construed against the company which prepared the policy. No case has been cited or come to the attention of the Court involving insurance coverage of a temporary substitute airplane under a policy clause such as that here involved, but an identical clause is frequently contained in automobile liability policies, and a number of courts have been concerned with the construction and application thereof, although this Court has apparently not heretofore had occasion to consider such a clause even in an automobile liability policy. There is an annotation in 34 A. L. R. (2d) 936, dealing with insurance coverage of substituted automobiles, including cases dealing with the coverage afforded when the insured automobile is withdrawn from normal use as the result of breakdown, etc.

Not even an automobile case precisely in point factually has been cited or discovered, but a decision somewhat in point is that of *Lewis v. Bradley*, 7 Wis. (2d) 586, 97

N. W. (2d) 408. In that case the insured was involved in an accident while driving his father's truck. He took his father's truck to go to church after unsuccessfully attempting to start his insured Plymouth automobile for "three or four minutes". The Court held that he was afforded coverage, while driving his father's truck, under a temporary substitute automobile clause virtually identical with the clause here involved. The Court pointed out that a substitute automobile within the meaning of the policy was one actually but only temporarily used in place of the insured vehicle for the same use the insured car would have been used for except for its withdrawal from normal use because of its breakdown, etc. The opinion contains the following pertinent language:

"* * * the withdrawal must be for the reason stated in the policy. However, this clause cannot be so narrowly applied to a breakdown as to require that the automobile must be in a garage before it is considered withdrawn from normal use. When an automobile is lost or destroyed it is withdrawn from the insured's normal use of it by that fact without the consent or act of the insured. A car which will not move at all withdraws itself from normal use when such fact is recognized by the insured as the defendant did here."

In *Allstate Insurance Company v. Roberts,* 156 Cal. App. (2d) 755, 320 P. (2d) 90, an insured Mercury automobile was running improperly to the extent that the insured considered driving it a hazard. He borrowed a Ford for use on an extended trip leaving the Mercury and the keys thereto in the driveway of the owner of the Ford who did not, however, drive the Mercury. It was held that the Ford was a substitute automobile within the purview of an identical policy clause.

In *Mid-Continent Casualty Company v. West,* Okla., 351 P. (2d) 398, the insured, because of the dangerous condition of the tires on his Buick, left the same and the keys thereto with his father, borrowing his father's Pontiac for an out of town trip upon which he normally would have

driven the Buick but for the dangerous condition of the tires. It was held that the Pontiac was a temporary substitute automobile with coverage afforded under a similar insurance clause.

We are inclined to the view that the circumstances which brought about the substitution of the Cessna for the Champion were as compelling, or at least a jury could so find, as were the circumstances bringing about the substitutions in the cases just above cited. Aside from Mr. Hysell's unsuccessful efforts to start the plane, it is, of course, common knowledge that an airplane with a balky engine can likely prove to be far more hazardous than an automobile with poor tires, or one that is not properly operating. The record does not indicate that Hysell was a mechanic and it would not have been unreasonable, under the circumstances, for him to have concluded that as a matter of safety the Champion should for the immediately foreseeable future be withdrawn from normal use.

The appellant insurer cites a number of cases in which automobiles were held not to be temporary substitutes within the policy language. All of these cases are, however, distinguishable on the ground that the use of the substitute automobile was occasioned by the insured's desire for either comfort or convenience and not because of an inoperable or dangerous condition of the insured vehicle.

As required, we have stated that the evidence and the inferences therefrom in the light most favorable to the plaintiff, and admittedly, in some instances the evidence is susceptible of contrary inferences. We are satisfied, however, that the court correctly submitted to the jury the issue of whether or not the Cessna plane was a temporary substitute aircraft within the meaning of the policy language.

The insurer also contends that its motions should have been granted on the ground that there was failure by Hysell to give prompt and particularized notice of the accident as required by the terms of the policy.

We do not think that any precedential value could be served by stating in detail the evidence as to notice or lack thereof. In brief, Hysell was in the hospital and an attorney, not involved in this litigation, on behalf of Hysell wrote the agency which issued the policy a letter informing it of the plane crash, giving the policy number and certain other information, but not as detailed a report as the insurer naturally would have desired. The insurer denies having received such letter. Somewhat more than three months later, when actions were commenced against Hysell, the same attorney forwarded the suit papers to the insurer and thereafter considerable correspondence ensued but Ranger declined to defend the actions. Suffice it to say, a review of the evidence convinces us that there was no error on the part of the trial court in declining to grant the insurer's motion on this ground and submitting to the jury the issues as to compliance with the notice provisions of the policy.

In the fairly recent case of *Factory Mutual Ins. Co. of America v. Kennedy,* 256 S. C. 376, 182 S. E. (2d) 727, we stated the pertinent rule here applicable as follows:

"We think the sound rule to be that, in an action affecting the rights of innocent third parties under an automobile liability insurance policy, the noncompliance by the insured with policy provisions as to notice and forwarding suit papers will not bar recovery, unless the insurer shows that the failure to give such notice has resulted in substantial prejudice to its rights."

The case of *Lee v. Metropolitan Ins. Co.,* 180 S. C. 475, 186 S. E. 376, relied upon by the insurer, is, we think clearly inapposite. In such case, in addition to other factual distinctions, the rights of innocent third parties were not involved.

The insurer states and argues a third question which was not, however, properly raised below nor brought here by any proper exception and, accordingly, such requires no discussion on the part of this Court.

We conclude that no error has been demonstrated and the judgment below is, accordingly,

Affirmed.

Moss, C. J., and LEWIS, BRAILSFORD and LITTLEJOHN, JJ., concur.