20345

David MILLER, Respondent, v. FIDELITY-PHOENIX INSUR-
ANCE COMPANY, Appellant.

(231 S. E. (2d) 701)

*Messrs. Berry and Berry,* of Columbia, *for Appellant,*

*Messrs. Hammer and Bernstein, and McKay, Sherrill Walker and Townsend,* of Columbia, *for Respondent,*

January 12, 1977.

LEWIS, Chief Justice:

This appeal involves the liability of appellant, the insurer, to pay a judgment obtained against its ten-year old insured for damages to respondent's property caused when the in-

sured set fire to respondent's home. Appellant contended that the actions of its insured in setting fire to respondent's home constituted "intentional" damage and therefore it was not liable because of a policy provision which excluded coverage for damage to property "caused intentionally by or at the direction of the insured."

This is an action at law with the factual and legal issues submitted to the trial judge for determination. In our opinion, the trial judge decided the issues under sound principles of law; and his findings of fact, that the damages to respondent's property were not *intentionally* caused by the insured, were supported by the evidence and, therefore, binding on this Court on appeal.

The following portions of the order of the lower court correctly dispose of the issues:

The case involves a suit based on insurance coverage, brought by the plaintiff for damages to property as a result of a fire occurring in plaintiff's home. Defendant is the homeowners insurer under a policy providing liability coverage in the amount of Twenty-Five Thousand ($25,000.00) Dollars. In prior proceedings, it has been determined that the fire was caused by a minor, Randy Gottlieb, a neighbor of the plaintiff. At the hearing, the defendant did not deny that the minor was an insured and I conclude from the evidence that he was within the definition of "insured" under the policy. The principal legal and factual issue before the Court was defendant's claim that coverage was precluded under the exclusion in the policy related to damages caused intentionally by or at the direction of the insured. It was further stipulated at the hearing that the amount of damages exceeded the limits of the policy and that if defendant was liable, it would be so to the extent of such coverage, which is Twenty-Five Thousand ($25,000.00) Dollars.

In construing the "intentional exclusion" provision of the policy, the beginning point is the often related conclusion that the provisions of an insurance policy

are to be liberally construed in favor of the insured and strictly construed against the company which prepared the policy. *Whittington v. Ranger Insurance Co.,* 261 S. C. 582, 201 S. E. (2d) 620 (1973). Apparently different courts have adopted varying constructions of the intentional act exclusion. Of the varying views, I am persuaded that the better rule is to the effect that not only the act causing the loss must have been intentional but that the results of the act must also have been intended. Thus, under this rule, the insured must be shown not only to have intentionally acted in setting the fire but must also have intended that the fire cause the type of loss or injury which resulted to the plaintiff. The *Connecticut Indemnity Company v. Nestor,* 4 Mich. App. 578, 145 N. W. (2d) 399.

Based upon this legal construction of the policy and the appropriate rule of law to be applied, the factual question which must be resolved becomes "Did the minor intend to cause damage to the property of the plaintiff when he set the fire in the house?" Based upon the evidence, it is my decision that the minor did not intend to cause such damages. The sole evidence before the Court was hearsay evidence presented by the defendant and that the fire was set primarily because the minor wanted the excitment of seeing the fire trucks come. Based upon this testimony, it appears that the reasonable factual conclusion is that the minor set the fire as a prank without any conscious intent to cause major destruction and property damage to plaintiff. For that reason, I conclude that the insured minor did not have the malicious purpose and intent in mind necessary to allow the intentional act exclusion to be invoked. This conclusion is supported by additional evidence which established the friendly and close relationship between the child and the plaintiff, in whose home he was a frequent visitor. The physical evidence concerning the fire also supports this conclusion, since it apparently was started by burning pictures and papers and that no flammable substance was involved.

For the foregoing reasons the judgment is affirmed.

NESS and GREGORY, JJ., concur.

LITTLEJOHN and RHODES, JJ., dissent.

LITTLEJOHN, Justice (dissenting) :

I dissent and would dispose of the appeal as follows :

This is an appeal from the order of the lower court granting judgment for the respondent David Miller (Miller) against the appellant Fidelity-Phoenix Insurance Company (Insurance Company) in the amount of $25,000.00, plus interest. The action was tried by the judge without a jury. The essence of the order is a ruling that Randy Gottlieb, an insured under a homeowner's policy issued by the Insurance Company, did not *intentionally* damage the house of Miller.

A recitation of the facts are necessary to a proper discussion of the issues :

Miller was the owner of his residence on Sylvan Drive in Columbia. Just before June 12, 1963, he and his wife locked the residence and went to Milwaukee. Mr. and Mrs. George M. Gottlieb and their 10½ year-old son, Randy, lived some 200 feet from the Miller home. On June 12 Randy went to the Miller residence, cut a screen, unlawfully entered and set two separate fires in two of the bedrooms by igniting papers and pictures. Several hours later, the smoldering fire was discovered and extinguished by the fire department. The residence was not destroyed, but damages in the amount of some $26,000.00 were sustained.

Thereafter, Miller brought an action, based on negligence and carelessness, against Randy Gottlieb for the damages which he had caused by fire. The action resulted in a summary judgment as to liability and a verdict in the amount of $26,421.19.

On the date of the fire, there was in full force and effect a homeowner's insurance policy issued by the Insurance Company to George M. Gottlieb. Randy was an "insured"

under the terms of the policy. Included in the policy were the following provisions applicable to Section II:

"THIS COMPANY AGREES WITH THE NAMED INSURED:

## INSURING AGREEMENTS

### 1. COVERAGE E—PERSONAL LIABILITY:

(a) Liability: To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage, and the Company shall defend any suit against the Insured alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent; but the Company may make such investigation and settlement of any claim or suit as it deems expedient.

. . . . .

## SPECIAL EXCLUSIONS

Section II of this Policy Does Not Apply:

. . . . .

(c) under Coverages E and F, to . . . property damage caused *intentionally* by or at the direction of the Insured; . . .." (Emphasis added.)

It is under Section E that Miller sought recovery for $25,000.00, the extent of the policy, plus interest and costs. Under Special Exclusion (c), the Insurance Company denied liability for the damages to Miller's house. It was the Insurance Company's contention that even though Randy was unquestionably an "insured" under the policy, his actions in setting the fire constituted *"intentional"* damage and thus the policy did not provide coverage.

Randy did not testify. The lower court gave controlling weight to the following hearsay testimony of Randy's father:

"Q. Mr. Gottlieb, the question I wanted to ask you was did Randy Gottlieb make any statements to Mr. Ruff concerning the origin of the fire?

"A. He admitted to Mr. Ruff that he had started the fire.

"Q. And did he give any detail on how he started it?

"A. No, other than he said he started a fire in two separate rooms, one in the bed, as I recall, and one on a chair, to the best of my recollection.

. . . . .

"Q. And did he at that time or any time thereafter, give any explanation as to why he started the fire?

"A. No, he was asked and he told me that he did not know. Then on questioning again, he said, Your Honor, he thought maybe the excitement of the fire trucks and the excitement, you know, with the fire—"

Based on this quotation from Randy, the lower court held that Randy "set fire as a prank without any conscious intent to cause major destruction and property damage to plaintiff," and thus exclusion (c), quoted hereinabove, did not apply. Judgment was entered for $25,000.00, plus interest, in favor of Miller against the Insurance Company.

In so ruling, I think the lower court erred. Intent involves a state of mind. The burden of proving that the damage was intentional so as to make the exclusion applicable was, of course, upon the Insurance Company. Intent may be proved by showing what one does and says. In my view, the Insurance Company has proved that both the burning and the damage were intentional within the meaning of the insurance policy. I disagree with the lower court when it found that Randy "set fire as a prank." The actions of Randy may not be properly denominated a prank. Even if it be found that Randy's actions were a prank and that the fires were set to bring about the excitement of fire trucks appearing, it must be conceded that this prank was an intentitonal act necessarily encompassing the intent that the burning continue until the fire trucks arrived. And this is exactly what happened. There is no contentiton but that the setting of the fires was intentional. There was no intervening, unexpected or unforeseen happening justifying a conclusion that the burning or the damages which followed were accidental.

The damages here involved could have been caused in only one of four ways:

1. the intentional act of Randy,
2. the intentional act of some other party,
3. an Act of God, or
4. an accident.

There is certainly no evidence warranting the conclusion that the damage was caused by some other party, or through an Act of God. The conclusion that the damages were accidental is simply not warranted by the evidence. If one cuts an apple from the limb of a tree, it is no accident that the apple is damaged when it hits the ground. If one sets a fire, it is no accident that a burning results. Certainly, the initial burning was intentional under any view of the facts. Just when the burning was changed from an intentional burning to an accidental burning is not pointed out by either the lower court or the majority opinion.

The action being one at law, tried by the judge without a jury, I would apply the rule set forth in *Chapman v. Allstate Ins. Co.*, 263 S. C. 565, 211 S. E. (2d) 876 (1974) and conclude that the judge's findings are without evidentiary support. The only reasonable inference drawn from the whole of the evidence is that the fire and the damage, which necessarily followed, were intentional within the meaning of the policy.

A homeowner's policy serves to protect against loss from the unexpected or the unlikely. It is not designed to protect against acts purposefully planned. By inserting an "intentional action" exclusionary clause in a policy, the Insurance Company gives notice to its insured persons that payment will not be provided when an otherwise compensable loss is intentitonally caused by an insured person. Indeed, it would be against public policy to allow one to insure himself against damages caused by unlawfully entering the home of another and setting a fire. This is not the type of loss for which an

insurance company should be called upon to respond. There is a distinct difference between an intentional act as contemplated by the terms of the policy (for which no compensation is provided) and an accidental occurrence (for which compensation is provided).

In my view, the intentional setting of the fires cannot be separated from the inescapable resulting damages under the facts of this case.

RHODES, J., concurs.