24105

VERMONT MUTUAL INSURANCE COMPANY, Appellant v. Benjamin
    SINGLETON, a minor under the age of eighteen (18) years old By and
    Through his Guardian ad Litem, Isaac Singleton; Stephen Webb, a minor
    under the age of eighteen (18) years old by and through his Guardian ad
    Litem, Carol M. Webb; and James E. Webb, III, Respondents.

(446 S.E. (2d) 417)

Supreme Court

*Stephen P. Groves* and *John Hamilton Smith,* both of *Young, Clement, Rivers & Tisdale,* Charleston, *for appellant.*

*Renee C. Newman* and *Mar, C. Tanenbaum,* Charleston, *for respondents Benjamin Singleton* and *Isaac Singleton.*

*P. Michael Duffy* and *Karen C. Jackson,* both of *McNair & Sanford, P.A.,* Charleston, *for respondent James E. Webb, III.*

Heard May 5, 1994.

Decided June 20, 1994.

TOAL, Justice:

This appeal arises from the special referee's order of insurance coverage in a declaratory judgment action. We affirm.

## FACTS

The insurance policy being construed is a voluntary home-owners policy which contains coverage for "bodily injury . . . caused by activities of the insured" but contains an exclusion for "bodily injury . . . which is expected or intended by the insured." This is commonly referred to as the "intentional act exclusion." The Appellant, Vermont Mutual Insurance Co. (hereinafter Vermont), brought this declaratory judgment action on September 21, 1990, to determine *inter alia,* whether its insured, Respondent, Stephen Webb, was entitled to a legal defense and insurance coverage for the injuries suffered by Respondent, Benjamin Singleton. Singleton's injuries were

the result of a fist fight in May 1988 between Singleton and Webb while they were both enrolled in high school.[1]

In November 1990, the Webbs filed their answer and in February 1991, the Singletons filed an answer and asserted a cross-claim against the Webbs. At the conclusion of discovery, the case was referred to the special referee for a final decision based on deposition testimony, the pleadings, the medical records, and the insurance policy.

On January 6, 1993, the special referee issued his written order finding that the insurance policy provided coverage and that Vermont was required to defend the Webbs. The Referee ordered that Vermont would be responsible for any damages adjudged in favor of the Singletons, and that the Singletons were entitled to recovery on their cross-claim for money damages in the amount of Seventy-Five Thousand, Five Hundred, Fifty-Four dollars ($75,554). It is from this order that Vermont now appeals.

## ISSUES

Vermont raises the following three issues on appeal:

1. Whether, when construing a homeowners policy's "intentional act exclusion," this Court should adopt the intentional act analysis as announced by the Court of Appeals in *Snakenberg v. Hartford Casualty Insurance Company*, 299 S.C. 164, 383 S.E. (2d) 2 (Ct. App. 1989);

2. Whether Insured Stephen Webb's striking Benjamin Singleton constituted an intentional act which would exclude coverage under the homeowner's insurance policy issued by Vermont; and

3. Whether the Webbs breached the insurance policy by failing to provide sufficient and timely notice of the incident to Vermont.

## LAW/ANALYSIS

*Snakenberg* Analysis

The special referee determined that insurance coverage existed based on our earlier precedent established in *Miller v. Fidelity Phoenix Ins. Co.*, 268 S.C. 72, 231 S.E. (2d) 701 (1977). In *Miller*, we held that the validity of an

---

[1] The altercation apparently arose over the perceived harassment of a young female classmate.

intentional act exclusion provision in a homeowner's policy required a two-prong analysis. The first is whether the act causing the loss was intentional, and the second is whether the results of the act were intended. *Id.; see also Allstate Ins. Co. v. Biggerstaff*, 703 F. Supp. 23 (D.S.C. 1989); *Couch on Insurance* 2d (Rev. ed.) § 44A:133. Vermont argues that this case should no longer be controlling and that we should adopt the analysis espoused by the Court of Appeals in *Snakenberg v. Hartford Casualty Insurance Company, Inc.*, 299 S.C. 164, 383 S.E. (2d) 2 (Ct. App. 1989).

In *Snakenberg,* the Court of Appeals addressed the issue of whether the tort arising from an invasion of privacy was an intentional act which would preclude coverage under the policy issued to Mr. Snakenberg. A reading of the *Snakenberg* opinion raises two interesting considerations. The first is that throughout the opinion there is no citation or reference to *Miller, supra,* or to the two-prong analysis announced in *Miller.* The second is that the parties in *Snakenberg* conceded that there was no coverage as to the tort of outrage and, therefore, the Court of Appeals focused only on the "intentional act" characterization of the invasion of privacy action.

Vermont argues that we should ignore our own precedent to adopt a more "contemporary" intentional act analysis. This argument misapprehends the *Snakenberg* decision. The Respondents argue, and we agree, that the Court of Appeals focused almost entirely on whether the tort of invasion of privacy was an intentional act. The intended harm or results of the act were not addressed because the arguments presented in *Snakenberg* concentrated on the question of whether a tort, which could be premised either on negligence or an intentional act, would trigger an insurance policy exclusion for defending against intentional acts. *Snakenberg, supra; see also South Carolina Medical Malpractice Liability Insurance Joint Underwriting Association v. Ferry,* 291 S.C. 460, 354 S.E. (2d) 378 (1987).

*Snakenberg, supra,* addressed a single and very narrow issue, and there simply is no indication that the opinion adopted a new or different analysis. Judge Bell opened the *Snakenberg* opinion with the observation, "This appeal raises an important question about the scope of the common law action for invasion of privacy." *Id.,* 299 S.C. at 166, 383 S.E. (2d) at 3. If we accepted Vermont's interpretation of *Snakenberg*

as the law, then almost any negligent act which required an affirmative decision would fall within the homeowner's insurance policy's intentional act exclusion. Consequently, the better rule is still found within our decision announced in *Miller, supra,* and it is against this *Miller* analysis that we now examine these facts.

Intentional Act Exclusion

■  The Vermont policy provides that: .

> [i]f a claim is made or a suit against an insured for damages because of bodily injury . . . caused by an occurrence to which this coverage applies [Vermont] will:
> 1. Pay up to our limit of liability for the damages for which the insured is legally liable; and
> 2. Provide a defense at our expense by counsel of our choice, even if suit is groundless, false or fraudulent. . . . Our duty to settle or defend ends when the amount we pay for damages resulting from the occurrence equals the limit of liability. . . .

The policy further states that the coverage only applies to injuries, "to a person off the insured location, if the bodily injury . . . is caused by the activities of an insured. . . ." The exclusion provision then provides that the coverage does not apply to a bodily injury, "which is expected or intended by the insured." [ROA at pp. 264-65]

As we stated, the appropriate precedent requires a two-prong intentional act analysis to determine the validity of the policy exclusion. *Miller, supra.* The intentional act or first prong requires that the insured actually intended to strike the other party. On the present record, the circumstances surrounding the altercation are somewhat in dispute; however, it is clear that the overall circumstances were hostile. It is axiomatic that even if it was in self-defense, the act of hitting Mr. Singleton was intentional. Thus, the first prong is satisfied here.

This claim of self-defense raises the question of whether the intentional act was done for an intentional result which is the second prong of the *Miller* analysis. The present record supports the finding that insured Webb was reacting to Singleton when Webb struck Singleton in the face. The record also contains evidence that Singleton participated in some sort of

provocation. Whether this provocation reasonably justified Webb's actions is a question which is inherent in any self-defense claim.

The Respondents argue that Webb did not specifically intend to strike Singleton in the face or that Webb intended or expected that Singleton would have suffered the extensive eye injuries. Moreover, because self-defense was arguably present, the referee found that Webb only intended to protect himself,[2] not inflict a specific injury on Singleton. *See Breland v. Schilling*, 550 So. (2d) 609 (La. 1989); *Preferred Mut. Ins. Co. v. Thompson*, 23 Ohio St. (3d) 78, 491 N.E. (2d) 688 (1986); *Allstate Ins. Co. v. Novak*, 210 Neb. 184, 313 N.W. (2d) 636 (1981). Because the evidence in the record supports the referee's finding that Webb did not intend a specific result, we see no reason to disturb the referee's decision.

Sufficient Notice

As an additional basis for denying coverage, Vermont ██ asserts that the Webbs breached the terms and conditions of the Vermont insurance policy by failing to notify Vermont of the incident between Webb and Singleton. Where a question exists as to the failure of an insured to comply with the notice requirements contained in a liability insurance contract, the burden of proof rests with the insurer. *Squires v. National Grange Mut. Ins. Co.*, 247 S.C. 58, 145 S.E. (2d) 673 (1965); *Pharr v. Canal Ins. Co.*, 233 S.C. 266, 104 S.E. (2d) 394 (1958). Where an action is filed for declaratory judgment seeking affirmative relief, the movant must prove his material allegations by a preponderance of the evidence. *Martin v. Cantrell*, 225 S.C. 140, 81 S.E. (2d) 37 (1954).

In his order, the special referee concluded that Vermont ██ failed to submit evidence to support the allegation that the Webbs breached the insurance contract by failing to notify Vermont of the incident. Vermont argues that the evidence in the record is undisputed that the Webbs did not notify Vermont of the incident in violation of the terms of the insurance policy. Vermont then maintains that because of the Webbs' complete failure to notify Vermont, substantial prejudice to Vermont could be presumed. We disagree that the evi-

---

[2] Vermont argues the relative size of Webb and Singleton as a basis for intended harm and that Webb could not reasonably believe he was in risk of injury; however, two inches in height and 75 pounds in weight is not so disparate as to raise an inference that self-defense was not reasonably justified.

dence was either undisputed or that a *presumption* of substantial prejudice arises from this alleged lack of notification.

Vermont relies solely on the testimony of Mrs. Webb for the proposition that the Webbs never notified Vermont of the incident. A close reading of Mrs. Webb's testimony simply does not lead to this conclusion. Throughout her testimony, Mrs. Webb notes that she has no knowledge about notification because it is normally within the province of her husband. In her deposition, she responds to a question about who handles matters concerning insurance with, "[h]e handles everything. All of our personal business." [ROA at pp. 245-46] Her deposition reveals that she was unfamiliar with the current lawsuit or why Vermont filed the suit. The deposition leaves little doubt that Mrs. Webb's knowledge of the legal action was strictly limited to Vermont disputing coverage. Mrs. Webb testifies that *she* did not correspond or converse with Vermont except the one time they called for general information about the incident; however, Mrs. Webb also testified that she did not know whether her husband had any contact with Vermont. [ROA at p. 249]

In response to a question about how the Webbs found out that the incident may be covered on the homeowners policy, she answered that it was through her lawyer. The deposition then asks about the lawyer and his involvement in the police reports surrounding the incident. Unfortunately, the record leaves open the important question of whether the Webbs' lawyer notified Vermont, and if so, when this notification took place.

In its complaint, Vermont states that notification came through Singleton's counsel in September 1989, yet the record does not contain any such letter of notification from any attorney. The record is also devoid of any testimony from either Mr. Webb or a representative of the insurance company, which could indicate that there was a lack of notification. Resting the "failure to notify" claim on the "undisputed" testimony of Mrs. Webb is a mistake since her testimony only raises more questions about whether Mr. Webb or his attorney contacted Vermont. It can only be undisputed that Mrs. Webb did not notify the carrier.

> The purpose of a notification requirement is to allow for investigation of the facts and to assist the insurer in preparing a defense. *Washington v. National Service*

*Fire Ins. Co.*, 252 S.C. 635, 168 S.E. (2d) 90 (1969). Where the rights of innocent parties are jeopardized by a failure of the insured to comply with the notice requirements of an insurance policy, the insurer must show substantial prejudice to the insurer's rights. *Factory Mut. Ins. Co. v. Kennedy*, 256 S.C. 376, 182 S.E. (2d) 727 (1971) (wherein the prejudice requirement was announced in a third-party automobile insurance case). We extended the substantial prejudice requirement beyond mandatory automobile insurance to voluntary insurance in *Whittington v. Ranger Ins. Co.*, 261 S.C. 582, 201 S.E. (2d) 620 (1973) (insurance for aviation operations).

On the present facts, Vermont asserts that a total failure to notify the insurer raises a presumption of substantial prejudice. There simply is no case law which supports such a presumption. Instead, the same burden of proof must be met to show that there was substantial prejudice to the insurer, and Vermont failed to meet this burden. The record shows that Vermont had some notice in September 1989, only four months after the incident involving Webb and Singleton. Vermont offers absolutely no proof that this four-month delay engendered substantial prejudice to Vermont's ability to investigate or defend against the Singletons' claim.[3]

The terms of the policy required the Webbs to notify Vermont as soon as practicable of any accident or occurrence giving rise to a claim. Where a notification provision is to be enforced, the court will interpret the term "as soon as practicable," as meaning within a reasonable time frame. *See Squires, supra.* The record offers no evidence of whether the four-month delay was unreasonable or that Vermont did not receive any other notice, therefore, the referee did not err in finding that Vermont failed in its burden of proof.

Accordingly, for the reasons stated, the decision of the special referee is AFFIRMED.

HARWELL, C.J., and CHANDLER, FINNEY and MOORE, JJ., concur.

---

[3] Vermont's declaratory action was filed and pursued prior to any claim being filed against the Webbs; ergo, it is unlikely that any in-depth investigation would have been conducted during the four-month period. Furthermore, the filing of the declaratory action prior to any claim by the Singletons is strong evidence that Vermont had an appropriate notice.