UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

LIBERTY LIFE INSURANCE COMPANY,
Plaintiff-Appellee,

v.

No. 98-1674

TRAVELERS INDEMNITY COMPANY OF
ILLINOIS,
Defendant-Appellant.

Appeal from the United States District Court
for the District of South Carolina, at Columbia.
Matthew J. Perry, Jr., Senior District Judge.
(CA-95-3585-3-0)

Argued: May 5, 1999

Decided: June 23, 1999

Before WILKINSON, Chief Judge, and WIDENER
and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** William Thomas Corbett, Jr., SHANLEY & FISHER,
Morristown, New Jersey, for Appellant. Kevin Kendrick Bell, ROB-
INSON, MCFADDEN & MOORE, P.C., Columbia, South Carolina,
for Appellee. **ON BRIEF:** Robert M. Vinci, SHANLEY & FISHER,
Morristown, New Jersey, for Appellant. David W. Robinson, II,
ROBINSON, MCFADDEN & MOORE, P.C., Columbia, South Caro-
lina, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Liberty Life Insurance Company brought suit against its insurer, Travelers Indemnity Company of Illinois, seeking damages from Travelers for its failure to defend and indemnify Liberty Life in several tort suits. The district court held that Travelers had a duty to defend Liberty Life and indemnify it against any liability. Travelers appeals, and we affirm.

I.

In 1993 and 1994 eight identical civil actions were filed in Alabama state court against Liberty Life and one of its insurance agents, Joe Teel. The suits charged Teel with fraud, misrepresentation, failure to disclose, and wantonness, recklessness, and negligence in the sale of insurance policies to the individual plaintiffs. They also asserted vicarious liability claims against Liberty Life. Finally, the suits asserted an independent cause of action against Liberty Life for negligently or wantonly hiring, supervising, and retaining Teel. Each plaintiff claimed that he "suffered mental anguish; and he was otherwise injured and damaged."

Liberty Life requested that its insurer, Travelers, defend and provide indemnity against the plaintiffs' hiring, supervision, and retention claims.* Some time before the suits were filed Travelers had issued two insurance policies to Liberty Life -- a Commercial General Liability (CGL) policy and a Catastrophe Umbrella (Umbrella) policy. Travelers declined to defend the suits, arguing alternatively that the conduct alleged in the Alabama actions was outside the policies' coverage and that the claims fell within specific policy exclusions.

_____

*Liberty Life's errors and omissions carrier, Employers Reinsurance, defended Liberty Life against the vicarious liability claims.

2

On August 1, 1994, the first suit went to trial. After the first day of trial the parties settled each claim except for the hiring, supervision, and retention claim against Liberty Life. That single claim then went to the jury, which returned a verdict against Liberty Life and awarded $2.5 million in punitive damages. Liberty Life subsequently entered into a global settlement in the remaining cases for an additional $2.5 million.

Liberty Life then brought a diversity action against Travelers in the United States District Court for the District of South Carolina seeking indemnification, defense costs, prejudgment interest, and attorneys' fees. On cross-motions for summary judgment, the district court found that the conduct alleged in the Alabama suits was covered under the CGL and Umbrella policies and that it did not fall within the exclusions contained in those policies. Consequently, the court held that Travelers was obligated to defend Liberty Life in the Alabama suits and that Travelers was liable for the expenses Liberty Life incurred in defending and settling those suits. Travelers appeals both rulings.

II.

A.

Travelers first takes issue with the district court's holding that Travelers had a duty to defend Liberty Life in the Alabama suits. Travelers argues that the plaintiffs' hiring, supervision, and retention claims were not covered by the CGL and Umbrella policies. The policies provide coverage for "bodily injury," which they respectively define as "bodily injury, sickness or disease" and "disability, mental anguish, mental injury, shock or fright resulting in or from otherwise covered bodily injury."

Travelers maintains that it had no duty to defend Liberty Life because the Alabama plaintiffs did not allege bodily injury. Travelers contends that because each plaintiff claimed only "mental anguish; and he was otherwise injured and damaged," each failed to allege the physical manifestation of emotional trauma that was necessary to trigger an obligation to defend. State Farm Mut. Auto. Ins. Co. v.

3

Ramsey, 368 S.E.2d 477 (S.C. Ct. App.), aff'd, 374 S.E.2d 896 (S.C. 1988).

We disagree. An insurer has a duty to defend if "the underlying complaint creates a possibility of coverage under an insurance policy." Isle of Palms Pest Control Co. v. Monticello Ins. Co., 459 S.E.2d 318, 319 (S.C. Ct. App. 1995), aff'd, 468 S.E.2d 304 (S.C. 1996). The plaintiffs' complaints certainly cleared this low threshold. Not only did the complaints allege mental anguish, they specifically included the more expansive "otherwise injured and damaged" language. In addition, it was altogether foreseeable from the complaints that the plaintiffs would have attempted to demonstrate physical manifestations of emotional distress at trial as such proof could have led to larger damage awards.

B.

Travelers next argues that Liberty Life's conduct fell within two of the policies' interrelated exclusions. The first-- the Professional Services exclusion -- provides that Travelers will not extend coverage under the policies for injury "due to the rendering or failure to render any professional service" in connection with "insurance company operations" or "insurance operations," respectively. The second -- the Insurance and Related Operations exclusion -- provides that Travelers will not cover bodily injury "for which the insured may be held liable because of" the "failure to discharge, or the improper discharge of, any obligation or duty, contractual or otherwise."

Travelers maintains that Liberty Life's hiring, supervision, and retention of Teel were professional services or were otherwise duties related to contracts or treaties of insurance. Travelers reads these exclusions too broadly. Each, by its very terms, is limited to services and duties inhering specifically in the insurance industry. Liberty Life's hiring, supervising, and retaining of its employees requires no specialized knowledge separate and apart from that required in any business. Activities such as performing background checks or reviewing an employee's performance are personnel actions that are common to most businesses. There is nothing about these routine employment practices that is peculiar to the insurance industry.

4

Indeed, reading the exclusions as broadly as Travelers suggests would eviscerate the policies. Under Travelers' interpretation everything Liberty Life does, whether part of its core insurance function or not, would fall under the exclusions. In short, Liberty Life would have no coverage.

In a final attempt to disclaim a duty to defend, Travelers departs from the language of the policies and looks to general principles of South Carolina law. Citing McPherson v. Michigan Mut. Ins. Co., 426 S.E.2d 770 (S.C. 1993), Travelers argues that a claim against a principal for negligent supervision is excluded from coverage if that claim is dependent upon the uncovered or excluded conduct of the principal's agents. See also Federated Mut. Ins. Co. v. Piedmont Petroleum Corp., 444 S.E.2d 532 (S.C. Ct. App. 1994); Sphere Drake Ins. Co. v. Litchfield, 438 S.E.2d 275 (S.C. Ct. App. 1993). Because Teel's fraud fell within the Professional Services and Insurance Related Operations exclusions of the two policies, and Liberty Life's liability would not have come about without Teel's conduct, Travelers argues that Liberty Life's own conduct was excluded.

Travelers misreads McPherson. In McPherson, the plaintiff was injured when a Charleston police officer used his police cruiser in an attempt to stop a fleeing prowler. The plaintiff's complaint charged the city with negligently training and supervising its officers in the use of patrol cars. Charleston's insurer denied coverage on the basis of an exclusion in Charleston's policy for injury "arising out of the ownership . . . of any automobile." McPherson , 426 S.E.2d at 771 n.1. The Supreme Court of South Carolina agreed, noting that "Charleston's alleged negligence is based on its duties as the owner of an automobile." Id. at 772. Rather than minting the broad principle that Travelers suggests, however, the court simply applied the exclusion in Charleston's policy to the city's own conduct. Because we have held that the exclusions in Liberty Life's policies do not apply to the company's own conduct, McPherson is inapposite.

C.

Travelers also argues that, even if it had a duty to defend Liberty Life, it had no duty to indemnify. Liberty Life's policies cover only bodily injury caused by an "occurrence," which they define as "an

5

accident, including continuous or repeated exposure to substantially the same general harmful conditions." The policies also exclude conduct that is "expected or intended from the standpoint of the insured."

Travelers notes that a duty to indemnify springs from the facts actually discovered or proven at trial. See Howard v. Allen, 176 S.E.2d 127, 129 (S.C. 1970) ("There is no obligation to defend until an action is brought and no obligation to indemnify until a judgment against the insured is obtained."). Because a finding that Liberty Life acted wantonly was necessary to the jury's award of punitive damages, Travelers argues that Liberty Life's conduct was not accidental and was therefore not an occurrence. Further, Travelers argues that the conduct was excluded because it was intentional.

We disagree. South Carolina law defines an accident as "an effect which the actor did not intend to produce and . . . cannot be charged with the design of producing." Goethe v. New York Life Ins. Co., 190 S.E. 451, 458 (S.C. 1937) (internal quotation marks omitted). Moreover, for an intentional conduct exclusion to apply, the actor must have intended the consequences of his actions. Vermont Mut. Ins. Co. v. Singleton, 446 S.E.2d 417, 420 (S.C. 1994). Although it is true that wantonness may involve a higher degree of culpability than simple negligence, it does not represent intentional conduct. Indeed, the Alabama trial court specifically instructed the jury that a finding of wantonness did not include a finding that Liberty Life intended for its agents to defraud its policy holders. Consequently, Liberty Life's conduct was an occurrence under the policies.

III.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

6