UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

WESTERN HERITAGE INSURANCE,
          *Plaintiff-Appellant,*

v.

MARK GIULIANI; CHRISTOPHER S.
PAASCH, d/b/a Beverage Station
Cafe, Incorporated,
          *Defendants-Appellees.*

No. 01-2315

Appeal from the United States District Court
for the District of South Carolina, at Florence.
Patrick Michael Duffy, District Judge.
(CA-00-1373-4-23)

Argued: May 8, 2002

Decided: June 28, 2002

Before NIEMEYER and MOTZ, Circuit Judges, and
C. Arlen BEAM, Senior Circuit Judge of the
United States Court of Appeals for the Eighth Circuit,
sitting by designation.

---

Affirmed in part and vacated in part by unpublished per curiam opinion.

---

## COUNSEL

**ARGUED:** Keating Lewis Simons, III, SIMONS & KEAVENY,
Charleston, South Carolina, for Appellant. Dennis Hampton Smith,

DENNIS H. SMITH, P.A., Surfside Beach, South Carolina, for Appellees. **ON BRIEF:** Thomas J. Keaveny, II, Beverly K. Ballinger, SIMONS & KEAVENY, Charleston, South Carolina, for Appellant.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

This appeal presents the question of whether Western Heritage Insurance Company has a duty, under a general liability policy issued by it to a bar owner, to defend and to indemnify the bar owner for injuries sustained by an intoxicated patron who became involved in an accident after leaving the bar. The district court concluded that the insurance company had both the duty to defend and to indemnify the bar owner and that late notice of suit was not a breach of the policy's conditions. Because the facts to justify indemnification have not yet been established, we vacate the indemnification ruling, and we affirm the district court's other rulings.

I

During the evening of June 9, 1995, Mark Giuliani rode his moped to the Beverage Station Cafe, a bar owned by Christopher Paasch. Giuliani was a regular customer of Beverage Station. Giuliani asserts that he was served alcoholic beverages by the bar's employees and "became visibly intoxicated during the evening." The bar's employees, on the other hand, assert that Giuliani arrived at the bar in an intoxicated state and that they did not serve him drinks. In either case, because of Giuliani's intoxicated state, the employees of the bar took Giuliani's moped from him for his safety. Later, however, they were persuaded to return the moped to Giuliani, permitting him to leave the bar to drive home on his moped. On the way, Giuliani wrecked his moped and sustained serious physical injury.

Giuliani sued Beverage Station in October 1995, alleging two causes of action. In his first cause of action, he asserted that the bar's employees continued serving him alcoholic beverages despite the fact that he was visibly intoxicated. As a result, he wrecked his moped on the way home and injured himself. In his second cause of action, Giuliani asserted, in addition to the allegations incorporated from the first cause of action, that the employees of the bar took Giuliani's moped from him but subsequently "relented" and gave it back to him, permitting him to drive the moped in an intoxicated state and thereby to injure himself. Giuliani alleged, "while the Defendant, by and through its employees, may or may not have had an original duty to take the moped away from the Plaintiff, Plaintiff is informed and believes that once they did so, and took control of the situation, they had a duty and obligation to thereafter act in a reasonable manner, and this they failed to do."

After being served with the complaint that named his bar as defendant, Paasch forwarded the suit papers to his insurance agent, Moore & Associates. Moore & Associates, which had procured Beverage Station's general liability policy from Western Heritage and liquor liability policy from Agora Syndicate, Inc., forwarded a copy of the complaint to Agora Syndicate, but not to Western Heritage. At the suggestion of Agora Syndicate, made over a year later, Moore & Associates sent notice to Western Heritage. Thus, from the period when suit was served in November 1995 up until April 1997, only Agora Syndicate had notice and only Agora Syndicate provided Paasch with a defense in the Giuliani lawsuit. When Western Heritage received the notice of the suit in April 1997, it advised Paasch that it was prejudiced because of the late notice. It also stated that the general liability policy did not provide coverage because of the liquor liability exclusion. Nevertheless, "out of an abundance of caution," Western Heritage designated an attorney to represent Beverage Station and Paasch in connection with the second cause of action, which alleged the bar's negligent entrustment of the moped to Giuliani. That attorney entered an appearance for Beverage Station and Paasch but did not actively participate in the defense because Agora Syndicate was providing the defense.

Three years later, in April 2000, Giuliani settled the first cause of action with Agora Syndicate, and the attorney supplied by Agora Syn-

dicate withdrew from the case. Because Western Heritage's attorney was not participating in the defense, the case proceeded to trial on the second cause of action by default, and the court entered a judgment against Beverage Station and Paasch in the amount of $2.5 million. When the Western Heritage lawyer learned of the default judgment, she filed a motion for a new trial and motion for relief from the judgment. The state court granted these motions, ordering a new trial, and stayed further proceedings until the issue of insurance coverage could be resolved through this action.

In this action, Western Heritage sought a declaratory judgment that it did not have a duty to defend or a duty to indemnify Beverage Station and Paasch, principally because of the liquor liability exclusion and the late notice of suit. On cross motions for summary judgment, the district court noted that while the first cause of action would not be covered by Western Heritage's policy because of the liquor liability exclusion, the second cause of action for negligent entrustment was covered by the policy. The district court explained that the second cause of action was not dependent on Beverage Station's service of alcoholic beverages and therefore was not excluded by the liquor liability exclusion. The court stated:

> Giuliani's tort claim does not depend on the insured serving alcoholic beverages to Giuliani because of the super[s]eding cause of a voluntary undertaking. In order to adjudicate Giuliani's claim for negligent entrustment it is immaterial whether the insured's employees served Giuliani alcoholic beverages after he was visibly intoxicated even though the complaint alleges that he was served while obviously intoxicated.

(Citation omitted). Indeed, Beverage Station employees testified in deposition that they did not serve Giuliani any alcoholic beverages. Relying on this rationale, the district court concluded that Western Heritage not only had a duty to defend but also a duty to indemnify.

On appeal, Western Heritage challenges this ruling as well as the district court's conclusion that Western Heritage could not avoid coverage based on the insured's late notification of the lawsuit.

## II

Western Heritage contends that the liquor liability exclusion applies to the negligent entrustment cause of action asserted in the Giuliani suit so that it has no duty to defend or to indemnify Beverage Station and Paasch. The exclusion provides that Western Heritage's policy does not apply to any personal injury for which Beverage Station and Paasch may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

Western Heritage argues that this exclusion applies because there was a "direct [causal] link between the service and consumption of alcoholic beverages and the resulting need to take the moped." It explains that Giuliani alleged that he became intoxicated at the Beverage Station as the result of the negligent service of alcohol to him and therefore, "[w]ithout that intoxication, it would have been unnecessary to separate . . . Giuliani from his moped." In other words, because the facts alleged by Giuliani in his first cause of action, relating to the negligent service of alcohol, were crucial to the need to take away the moped *and* because Giuliani realleged them in the second cause of action, alleging negligent entrustment, the two claims are "inextricably intertwined." Therefore, Beverage Station and Paasch could be held liable for Giuliani's bodily injuries resulting from the negligent entrustment because Beverage Station "caus[ed] or contribut[ed] to the intoxication of [a] person," and therefore the exclusion applies. In support of its argument, Western Heritage relies mainly on *B.L.G. Enterprises, Inc. v. First Financial Insurance Co.*, 514 S.E.2d 327 (S.C. 1999) (applying liquor liability exclusion to deny coverage to bar for negligently serving alcohol to a patron who in turn caused injury to a passenger), and *Federated Mutual Insurance Co. v. Piedmont Petroleum Corp.*, 444 S.E.2d 532 (S.C. 1994) (applying liquor

liability exclusion to deny coverage for the claim of a minor who was injured in an automobile accident after purchasing liquor at a gas station).

Giuliani's second cause of action against Beverage Station alleged that Beverage Station employees undertook to protect Giuliani by taking away his moped because of his intoxicated condition, but then "relented" and returned the moped to him while he was still in an intoxicated state. This claim for negligent entrustment, which rests on *Carson v. Adgar*, 486 S.E.2d 3 (S.C. 1997), and in turn on the Restatement of Torts (Second) § 324, arises when a person with no preexisting duty "takes charge of another who is helpless adequately to aid or protect himself" and then fails to exercise reasonable care in providing such aid or discontinues the aid, worsening the other's position. This negligent entrustment claim is distinct from Giuliani's claim for the negligent service of alcohol, and in this respect Giuliani's suit is unlike those involved in *B.L.G. Enterprises* and *Federated Mutual*, on which Western Heritage relies.

Although the facts of Giuliani's first cause of action for the negligent service of alcohol certainly provide a context — a more compelling story of negligence to argue to the jury — there is no *required* "causal link" between Beverage Station's alleged service of alcohol to Giuliani and the injuries resulting from the negligent entrustment. This mere factual or contextual relationship does not necessarily equate to a causal link. In order to prove a claim for negligent entrustment, it is entirely unnecessary that Giuliani prove that Beverage Station contributed at all to his intoxication. If Giuliani entered the bar intoxicated, as Beverage Station's employees testified, and the employees therefore took the moped from him, later giving it back but without serving him with any alcohol, Beverage Station could still be found liable under the second cause of action.

Accordingly, we agree with the district court that the liquor liability exclusion need not apply to the second cause of action based on negligent entrustment. With this potential for coverage, Western Heritage has a duty to defend. *See Town of Duncan v. State Budget & Control Bd.*, 482 S.E.2d 768, 773 n.14 (S.C. 1997).

Whether Western Heritage has a duty to indemnify, however, cannot now be determined. There is a factual dispute about whether Bev-

erage Station served Giuliani any alcoholic beverages. Giuliani asserts in his complaint that he was served alcoholic beverages at Beverage Station, and Beverage Station's employees deny that assertion. Surely if Beverage Station's employees are correct, the liquor liability exclusion could not be relevant. Therefore, we vacate the district court's ruling that requires indemnity of any judgment entered on the second cause of action so that indemnity can be determined from facts established in the underlying suit.

## III

Western Heritage also contends that Beverage Station and Paasch failed to provide it with adequate notice, as required by the insurance policy. The policy provides that the insured "must see to it that [Western Heritage] receive written notice of the claim or 'suit' as soon as practicable." The purpose of this notification requirement is to allow the insurer to investigate the facts of the case and prepare a defense. *Vermont Mut. Ins. Co. v. Singleton*, 446 S.E.2d 417, 421 (S.C. 1994).

Under South Carolina law, the failure of an insured to comply with a notice requirement can bar recovery by the insured. *See Squires v. Nat'l Grange Mut. Ins. Co.*, 145 S.E.2d 673, 677 (S.C. 1965). But the insurance company bears the burden of showing that it did not receive notice of a lawsuit against an insured and that it suffered "substantial prejudice" by this lack of notice. *Vermont Mutual*, 446 S.E.2d at 421.

In this case, it is apparent that Paasch notified Moore & Associates, the insurance agent that had procured for him both the Western Heritage and Agora Syndicate policies, of the Giuliani suit. For unknown reasons, Moore & Associates only notified Agora Syndicate in early November 1995. Western Heritage was not provided notice until over a year later, in April 1997. Western Heritage contends that the notice to Moore & Associates was not adequate, because Moore & Associates was not its agent for receiving notice and because the delay prejudiced it, as witnesses had moved away to unknown locations.

Under South Carolina law, notice to the insured's agent constitutes notice to the insurer. *See Noisette v. Ismail*, 384 S.E.2d 310, 315 (S.C. Ct. App. 1989), *rev'd on other grounds*, 403 S.E.2d 122 (S.C. 1991). But it is unclear from the record in this case whether Moore & Asso-

ciates was Western Heritage's agent for the purpose of receiving notice of claims. There is nothing in the record that establishes this agency relationship. Indeed, the Western Heritage policy lists "the Kimbrell Company, Inc." as its agent, not Moore & Associates. On the other hand, Moore & Associates is printed at the bottom of several change endorsements that are included in the policy. We need not, however, decide whether Moore & Associates was Western Heritage's agent because Western Heritage received actual notice of the Giuliani suit on April 4, 1997, three years *before* the case went to trial. We agree with the district court that Western Heritage has not demonstrated "substantial prejudice" because of this initial delay.

Western Heritage asserts that it was prejudiced because (1) all deposed employees of Beverage Station had left the company before April 1997; (2) Western Heritage cannot find Paasch; (3) deposition testimony is conflicting and some witnesses that night admitted they had been drinking; (4) Western Heritage could not find other witnesses to the events that night; and (5) Beverage Station has been sold or transferred and no longer exists. Although these assertions suggest the possibility of substantial prejudice, Western Heritage has not demonstrated how any one of its assertions has led to actual prejudice. The facts that deposed witnesses have left Beverage Station's employment and that Beverage Station no longer exists are not, standing alone, prejudicial. Western Heritage has not claimed that it cannot find the employees — except for Paasch — or how they would have helped its case. Moreover, there is no indication that the continued existence of Beverage Station is relevant. Similarly, there is no allegation as to how any absent witness would have helped Western Heritage's defense. But most important, Western Heritage had nearly three years before trial to fill any gaps or to clear up any conflicts in deposition testimony. During that period, the attorney selected by Western Heritage had made her appearance in the case and could have participated. She surely could have collaborated with counsel for Agora Syndicate, and failing success, she could herself have undertaken further discovery to fill gaps or clarify any points that were left insufficiently developed.

Accordingly, we reject Western Heritage's contention that Beverage Station and Paasch should be denied coverage under its policy based on the 17-month delay in receiving notice, particularly when

Western Heritage had three years thereafter to mitigate the potential prejudice that it now claims.

## IV

For the foregoing reasons, we affirm the district court's declaratory judgment concluding that Western Heritage has a duty to defend Beverage Station and Paasch in the Giuliani litigation; and we vacate the district court's ruling that requires Western Heritage to indemnify Beverage Station and Paasch for any judgment that might be entered under the second cause of action in the Giuliani case, because the facts material to any indemnification requirement have not yet been established in the underlying suit.

*AFFIRMED IN PART AND VACATED IN PART*