**Revised December 14, 2000**

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

m 00-30746
Summary Calendar
_____


BRADLEY HANKS AND TRACY HANKS,

Plaintiffs,

VERSUS

SEAN BANNON ZENNER, ET AL.,

Defendants.


COLLECT AMERICA, LTD.,

Defendant-
Cross Claimant-
Appellant,

VERSUS

COLONY INSURANCE COMPANY,

Defendant-
Cross Defendant-
Appellee.

Appeal from the United States District Court
for the Western District of Louisiana

December 8, 2000

Before SMITH, BENAVIDES, and
DENNIS, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

Collect America, Ltd. ("Collect America"), appeals an adverse summary judgment holding that Colony Insurance Company ("Colony") has no duty to defend it in a case of alleged illegal debt collection practices, because the claims are not covered by the insurance policy. Concluding that some of the claims are covered, we reverse and remand.

## I.

Bradley Hanks received a collection letter from the Zenner law firm regarding a defaulted Visa card account for $2,660. When Hanks called the firm, Billy Melton, a firm employee, threatened that unless Hanks made six monthly payments, Melton would have the sheriff go to the Hankses' house and arrest Hanks. Over the course of several more calls, Melton repeatedly threatened to have Hanks jailed and to garnish his wages, freeze his checking account, and have him charged with a felony.

The Hankses filed suit under state and federal law for extortion, blackmail, violations of the Fair Debt Collection Practices Act, and violations of the Louisiana Unfair Trade Practices and Consumer Protection Law. The Hankses claim that "Defendants' actions and failures to act . . . were done knowingly, willingly, wantonly, with malice and intent to harm, and with reckless disregard for the law and the rights of others."

Collect America filed a cross-claim against Colony, seeking coverage under the commercial general liability policy and to have Colony defend the action. Colony refused to defend and moved for summary judgment, claiming that the asserted injuries were caused intentionally or were the result of negligent supervision and training.

Colony pointed out that the policy does not cover intentional injuries; it states that it covers only injuries arising from an "occurrence" and defines an occurrence as "an accident."[1] Colony further noted that injuries arising from "the negligent hiring, supervision or training of any employee" also were excluded from coverage by a separate endorsement. The court granted summary judgment.

## II.

The parties disagree as to whether Louisiana or South Carolina law applies. In diversity cases, a federal court must apply the substan-

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] The full definition is "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

tive law of the state in which it sits.[2] Accordingly, "choice of substantive law is governed by the forum state's choice of law rules." *Allison v. ITE Imperial Corp.*, 928 F.2d 137, 138 (5th Cir. 1991).

Louisiana Civil Code articles 3515 and 3537 govern conflicts of laws questions in contracts cases. Article 3515 states:

> Except as otherwise provided in this Book, an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.

> That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.

Article 3537 states:

> Except as otherwise provided in this Title, an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.

> That state is determined by evaluat-

ing the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting commercial intercourse, and of protecting one party from undue imposition by the other.

In *Sentilles Optical Servs. v. Phillips,* 651 So. 2d 395 (La. App. 2d Cir. 1995), the court explained:

> Enforcement of a conventional obligation is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue. La. C.C. Art. 3537. Article 3537 lists factors for determining the state whose law should be applied, incorporating the factors listed in the more general La. C.C. Art. 3515. The two articles are intended to be read together. *See* La. C.C. Art. 3537, Comment (c). The objective of the articles is to "identify the state whose policies would most seriously be impaired if its laws were not applied to [the] issue [to be resolved]." La. C.C. Arts. 3515 and 3537. This objective is acheived through an issue-specific analysis of the policies of each of the two states, the first step in which process is to identify the relevant policies of the laws in two states.

---

[2] *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938); *Guaranty Trust Co. v. York*, 326 U.S. 99 (1945).

*Id.* at 398, *cited in Shell Oil Co. v. Hollywood Marine, Inc.*, 701 So. 2d 1038, 1040 (La. App. 5th Cir. 1997).

In *Levy v. Jackson*, 612 So. 2d 894 (La. App. 4th Cir. 1993), the court applied the Louisiana conflicts of laws statutes to decide whether Louisiana or Alabama law applied to a case of insurance contract construction. A guest passenger in an automobile sued the driver (her father) for injuries from an accident in Louisiana. The policy was issued in Alabama and covered the car, which was registered and garaged in Alabama. Both parties were domiciled in Alabama. The *Levy* court decided:

> [T]his conflict of law problem is foremost and principally an issue of insurance coverage, and therefore one of contract. When the basics are examined, Heather Levy is suing her father's insurance company and the issue is whether that insurance covers her claim. C.C. Art. 3537 says that an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied, and section (1) indicates that domicile of the parties is a paramount question. Another factor given strong consideration is the expectations of the parties. In this case that means risks coverage and premiums paid. They are directly related.
>
> State Farm issued a policy in Alabama, accepting the risks of loss under Alabama law, and charged premiums accordingly. Patrick Levy could not expect coverage of risks not contemplated by either him or his insurer. Determination of coverage *vis a vis* Patrick Levy

and State Farm should be governed by Alabama law.

*Id.* at 897. *See also Holcomb v. Universal Ins. Co.*, 640 So. 2d 718, 722 (La. App. 3d Cir.) (holding that Arkansas law governs the insurance contract in question, because "the application of Louisiana law in this case would, in our opinion, impinge on the State of Arkansas' right to regulate the insurance industry in that state."), *writ denied*, 644 So. 2d 643 (La. 1994).

In *Resure, Inc. v. Chemical Distributors, Inc.*, 927 F. Supp. 190 (M.D. La. 1996), a case analogous to the one before us, the court addressed which state law should govern the interpretation of a commercial general liability policy entered into outside of Louisiana and between two out-of-state parties where the accident giving rise to suit occurred in Louisiana. The court noted:

> Resure points out that CDI is a New Mexico corporation, and that the insurance policy was negotiated and delivered in New Mexico. Resure then argues that "if the law of the place of 'accident' is applied to a multi-state trucking company (like CDI), neither it nor its insurer have any means of negotiating required coverage for the insured with any degree of certainty." Resure also makes the related argument that application of the law of the place of the accident could result in inconsistent results from state to state.

*Id.* at 192 (footnote omitted).

These cases give us direction as to how Louisiana courts apply article 3537. We now evaluate which state's policies would be most

4

seriously impaired if its law were not applied here. Just as Louisiana courts have determined in the above cases, we conclude that the state in which the insurance policy was negotiated, written, and agreed to——South Carolina——has the most substantial interest in regulation of such policies. Further, none of the parties is domiciled in Louisiana. Colony is a South Carolina company, and it issued this policy to another South Carolina company——U.S. Collections, Inc. Collect America later was added as an additional insured. Collect America is a Colorado company. Only the Hankses——who are not appealing the dismissal of Colony——are residents of Louisiana.

Contrarily, Louisiana's policies would not be significantly impaired by having South Carolina law applied. Louisiana does have a strong policy that protects its citizens from extortion and blackmail such as that alleged by the Hanks against Collect America; this policy, however, is affected little by the determination of whether Collect America is insured against such a claim.

Additionally, the expectations of the parties would be upheld by applying South Carolina law. Just as the parties in *Levy* contracted under Alabama law, gauged the risks of loss under Alabama law, and charged premiums accordingly, the parties here contracted under South Carolina law, assessing risks and premiums accordingly. To subject this insurance contract to the law of Louisiana would undermine the policy of allowing the parties to negotiate insurance contracts with certainty and would allow the coverage to vary depending on the state in which a claim is brought. *See id*.

*Shell* involved facts and legal questions almost identical to those here. In *Shell*, there was a comprehensive commercial liability policy much like the one here. The accident occurred in Louisiana, where an employee of Hollywood Marine was injured and sued Shell, which cross-claimed against Hollywood and its insurance company, claiming that Shell was an additional insured under Hollywood's policy. Shell argued that Louisiana law applied to the question whether the policy covered the claims made against it. The Louisiana court of appeal disagreed and concluded that Texas law governed:

> Texas has a compelling interest is [sic] regulating insurance policies contracted for in Texas and issued to companies doing business in Texas . . . . Louisiana's interest arises only because a Delaware corporation, with its principal place of business in Texas, seeks indemnity under a policy of insurance issued in Texas to recover payment it made to recompense for damages it caused a Louisiana citizen. We do not believe that this interest is sufficient to override the compelling interest Texas has in regulating insurance contracts written in Texas and issued to Texas companies. Accordingly, we hold that Texas law should be applied in this instance.

*Shell*, 701 So. 2d at 1041. We conclude that, just as Texas had an interest in the insurance policy at issue in *Shell*, South Carolina has a compelling interest in regulating insurance policies contracted for in South Carolina and issued to companies doing business there.

Here as well, Louisiana's interest arises only because a Colorado corporation seeks indemnity under a policy of insurance issued in

South Carolina for damages it caused two Louisiana citizens.[3] Just as the court did in *Shell*, we conclude that this interest is insufficient to override the compelling interest of South Carolina in regulating insurance contracts written in that state. Accordingly, South Carolina law should be applied.

### III.

Under South Carolina law, the determination of whether an insurance company is obligated to defend an action under its policy provisions is based on the complaint. *R.A. Earnhardt Textile Mach. Div., Inc. v. South Carolina Ins. Co.*, 282 S.E.2d 856, 857 (S.C. 1981). If the facts alleged fail to bring the case within the policy's coverage, the insurer has no obligation to defend. *Id.*; *see also Manufacturers & Merchants Mut. Ins. Co. v. Harvey*, 498 S.E.2d 222 (S.C. App. 1998) (citing cases).

Our inquiry therefore must be whether any of the claims made in the complaint allege facts that bring the action within the policy's coverage. If so, Colony owes Collect America a duty to defend and may be required to indemnify Collect America if an adverse decision is returned on a covered claim. If not, Colony owes no such duty.

_____

[3] We acknowledge one small distinction between the two cases. In *Shell*, payment already had been made to the injured Louisiana resident. It could be argued that Louisiana's interest in this case is therefore somewhat greater, because the Louisiana plaintiff has not yet been compensated, and therefore a finding of coverage for Collect America might affect the amount of compensation available to the Hanks. We do not believe, however, that Louisiana's policy that plaintiffs be compensated for injury would be seriously impaired by applying South Carolina law to construe this insurance contract.

The Hankses make a number of claims under state and federal law for damages arising from Collect America's allegedly unlawful debt collection practices, which, according to the Hankses, caused them to suffer "extreme emotional distress, fear, anxiety, humiliation, and outrage." Before we address whether the Hankses' various claims are covered under the policy, we first examine the types of injuries covered: "bodily injury and property damage liability." Because South Carolina law recognizes infliction of emotional distress as a "bodily injury" under a standard insurance policy, *see State Farm Mut. Auto. Ins. Co. v. Ramsey*, 374 S.E.2d 896 (S.C. 1988), the Hankses' emotional distress is covered under the policy.

The policy covers "bodily injury" only if it is caused by an "occurrence," which it defines as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The policy does not define "accident." We therefore look to the ordinary meaning of the term.

The South Carolina Supreme Court has interpreted the ordinary meaning of "accident" to be "an effect which the actor did not intend to produce and cannot be charged with the design of producing." *Goethe v. New York Life Ins. Co.*, 190 S.E. 451 (S.C. 1937), *quoted in Manufacturers & Merchants*, 498 S.E.2d at 225. Thus, only claims for bodily injuries caused by accidents are covered under Collect America's policy. All of the Hankses' claims based on intentional acts are therefore outside the coverage, and Colony owes no duty to defend them.

The Hankses also claim that the allegedly illegal debt collection tactics employed by Melton resulted from Collect America's failure

properly to hire, train, and supervise. This claim also is excluded by an endorsement that excludes bodily injury arising from "[t]he negligent hiring, supervision or training of any employee of the insured."

Collect America argues, however, that the complaint can be read as alleging negligence, separate from and above any claims for negligent supervision. Injuries caused by negligence are "occurrences" and thus are covered by the policy.

Collect America claims that paragraph 24 of the complaint may be read as a claim for injury from negligence, apart from negligent supervision. That paragraph states, "Collect America and/or Sean Bannon Zenner negligently or willfully allowed [Melton] to engage in abusive and criminal methods of debt collection." Colony claims that this paragraph can be interpreted only as a claim for injuries arising from negligent supervision of an employee, and it vigorously denies that there are any negligence claims set forth in the complaint.

We conclude that this paragraph can be read two waysSSas a claim of negligent supervision or as one for simple negligence. An insurer has a duty to defend if "the underlying complaint creates a possibility of coverage under an insurance policy." *Isle of Palms Pest Control Co. v. Monticello Ins. Co.*, 459 S.E.2d 318, 319 (S.C. Ct. App. 1995), *aff'd*, 468 S.E.2d 304 (S.C. 1996). If paragraph 24 is viewed only as a claim for negligent failure to supervise, then it is plainly excluded from coverage by the negligent supervision exception endorsement discussed above. We agree with Collect America, however, that this paragraph also may be interpreted as a claim of simple negligence on

the part of Collect America.

If Collect America faithfully supervised Melton and directed him to do the acts complained of, not knowing that they were illegal, then Collect America may have negligently violated debt collection laws or negligently inflicted emotional distress, and this would be covered by the policy. This possibility of coverage is enough to trigger Colony's duty to defend this suit.

Further, even the defendants' intentional actions may be held to be "not intentional" and thus "occurrences" under South Carolina law. Though we have noted that claims for damages from intentional torts are not covered, under South Carolina law the alleged "intentional" acts of Collect America and its employee may fall short of the requirements needed to make an act intentional for purposes of an exception to coverage.

"The South Carolina Supreme Court has held that, for an act to be an intentional act excluded by the intentional act exclusion of a policy, (1) the act which produces the loss must be intentional, and (2) the results of the act must be intended." *Manufacturers & Merchants*, 498 S.E.2d at 229 (citing *Miller v. Fidelity-Phoenix Ins. Co.*, 231 S.E.2d 701 (S.C. 1977)). Thus, if the Hanks do not prove that the acts complained of were done (1) intentionally and (2) with intent to cause the complained-of harm, they will not have proven an intentional act of the type that is excepted from the policy.[4] Therefore, until it is proven

_____

[4] For example, the claim for infliction of emotional distress will not be considered intentional for purposes of the insurance exception until the Hankses prove (1) that Melton purposefully
(continued...)

that a defendant intended to cause the complained-of harm, a duty to defend is present if the complained-of injury also could have been the result of negligence.[5]

Therefore, we conclude that claims have been alleged that are within the coverage of the policy. Colony's duty to defend is thus triggered. The judgment is REVERSED and REMANDED for further proceedings.

[4](...continued)
threatened them and (2) that he intended to cause emotional distress rising to the level of a tort.

[5] We note, without commenting on, the fact that this two-part intent requirement may give insurers perverse incentives when defending insureds against claims for intentional injuries. Typically an insurer's and insured's interests are alignedSSboth want to avoid a finding of liability. Under South Carolina law, however, the insurer can escape liability if the defendant is found to have intentionally injured the plaintiff. The insurance company, therefore, has an incentive to let intentional injury be proven. This incentive is directly opposed to the insured's incentive to show that the injury was not intentional, because once intent is found the insured is no longer covered, and higher damages generally result.

Nevertheless, the South Carolina Supreme Court has plainly stated that its two-part test for intentionality applies in insurance cases. The court first adopted this test for intentionality in *Miller*, in which the court held that where a minor purposefully set fire to a house by lighting papers on fire in two separate rooms, he acted without a conscious intent to cause major property damage, and thus he did not have the necessary intent to trigger the intentional act exclusion. The South Carolina Supreme Court reaffirmed *Miller* in *Vermont Mut. Ins. Co. v. Singleton*, 446 S.E.2d 417 (S.C. 1994), holding that the intentional act exclusion of a home owner's policy did not apply to exclude coverage for damage to plaintiff's eye resulting from a fight with the defendant. The court acknowledged that the defendant purposefully had hit the plaintiff but held that because the record contained evidence that the defendant was defending himself, the requisite subjective intent to
(continued...)

[5](...continued)
damage the plaintiff's eye could not be found, and the intentional act exclusion thus did not apply.

Unlike the case *sub judice*, in which Collect America is seeking inclusion under the definition of occurrences, both *Miller* and *Vermont Mutual* involved insureds who sought to avoid exclusion under an exception for intentional acts. South Carolina courts do not seem to consider this difference important, however. *See Manufacturers & Merchants*, 498 S.E.2d at 229 (using the *Miller* two-part test for intentional acts to determine whether an act was outside the definition of "occurrence").